THOMAS BRACKEN AND ANOTHER V. ANDREW NEILL.

Where a commission to take a deposition was directed to the Clerk of the District Court of the county of Victoria, and was returned executed by the Clerk of the District Court of the county of Gonzales, and no objection was made until the deposition was offered in evidence, this Court said the objection went to the form and manner of taking, and should have been made in writing and notified before the trial commenced.

In estimating the amount of damages in cases of fraud, it is proper to include the attorney's fee in the suit.

Where A sued B, who was an heir of C, for failing to pay over money delivered by A to B to be paid to C's executor, which money was part of the purchase money of land sold by C to A, it was held that the proceedings in a suit by the executor of C against A, from which it appeared that B had not paid over the money, were not competent evidence against B, of that fact, he not being a party to the suit by the executor of C against A.

Where the plaintiff sued for damages for fraud, in the county where the fraud was committed, and recovered judgment, and it appeared to this Court, on error, that there was no fraud, but merely failure to perform, the judgment of the Court below, after a *remittitur* of the damages allowed for the fraud, was reformed for the proper amount, making the defendant in error pay all the costs.

It seems that the Supreme Court will, in proper cases, and on proper terms, conform the judgment to the case proved, although variant from the case alleged.

Error from Guadalupe.    The action was for damages for fraud practiced by Thomas Bracken on Andrew Neill, in this, that the latter, " being desirous of transmitting money to the " executor of said deceased, entrusted to one Thomas Bracken, " who represented himself as one of the heirs of said William

" Bracken deceased, the sum of six hundred dollars to be by " him taken and delivered to John McHenry, the then execu- " tor of said Wm. Bracken, deceased, who resided in Jackson " county, which fact is evidenced by a receipt given by said " Thomas Bracken, at Seguin, in Guadalupe county, on the 22d " day of April, 1853, and is as follows : ' Received of .Andrew " Neill the sum of six hundred dollars, as a payment to John " McHenry, executor of Wm. Bracken, deceased, on land " contracted by said Bracken to said Neill, April 16th, 1850, " and which is received as a part payment upon the indebted- " ness of said Neill on that account, and to be accounted for to " him on the settlement of said business.  This is received by " me to be handed over to said McHenry.

"Seguin, April 22d, 1853.          THOMAS BRACKEN.

" Witness, A. H. PHILIPS.'

" Plaintiff alleges and so charges, that in violation of the trust " reposed in him, in order to defraud your petitioner out of " said money, said Thomas Bracken has not paid over said " money or any part to said McHenry, &c.,     *    *    *    *    * " by which he has sustained damages in the sum of two thou- " sand dollars ; that the fraud was committed in the county of " Guadalupe," &c.

Neither of the defendants resided in Guadalupe county, nor was the administration of the estate of Wm. Bracken opened therein.   Thomas Bracken was alleged to be a transient person, to be found in Jackson county.

The deposition of A. H. Philips was as follows : I know of a receipt given by Thomas Bracken to Andrew Neill, a copy of which is given in the second interrogatory, correctly, I think, except the date of the year, which, in the original, I presume, will be found to be 1853.   The receipt was given on the occasion of a settlement between Andrew Neill and Thomas Bracken in relation to the cancellation of certain deeds of conveyance.   Neill cancelled the deeds, and Bracken was to refund the purchase money.   The purchase money, including

some costs and expenses, which Bracken agreed to pay, amount-
ed to twelve hundred dollars, as near as I can now recollect.
Bracken counted out and handed to Neill six hundred dollars,
and Neill then told him that he, Neill, was owing the estate of
William Bracken, and that if Thomas Bracken would hand
over the other six hundred dollars to McHenry, the then exec-
utor of the estate of William Bracken, or see that in his, Neill's,
settlement with the estate, he Neill, should be credited with
that amount, it would suit him as well or better than to have
the money.   It was then agreed that Bracken should take the
money to McHenry, or secure Neill a credit with him for six
hundred dollars on Neill's settlement with McHenry.   Neill
then wrote the receipt alluded to, up to the words, " said busi-
ness," inclusive.   Bracken declined signing this receipt, be-
cause it recited matters as to a contract of which he, Bracken,
knew nothing.   To stop the discussion, I took the paper and
after looking it over, added the following: "This money
is received by me to be handed over to said McHenry."   I
think the original receipt will show that this last clause is in
my hand-writing.   If it is not, it was suggested by me as above,
stating all the agreement of the parties and their object and
intention.   Neill expressed himself satisfied with the altera-
tion ; and, thus altered, I told Bracken he could safely sign it,
as the recitals were mere surplusage.   Bracken then signed
the receipt and handed it to Neill.   I do not now recollect
whether the words, " Seguin, April 22d, 1853," are in my hand-
writing or in Neill's.   I do not know whether or not the mo-
ney was paid to McHenry.   All I know on that subject is, that
Bracken, McHenry and myself talked over the matter, after
my return from Seguin, and that the six hundred dollars was
to be credited to Neill and charged to the heirs of William
Bracken, Thomas being one of them.   James Bracken was not
to be charged with any portion of the six hundred dollars, be-
cause he had not sold to Neill and was not interested in the
cancellation of the deeds spoken of above.   McHenry shortly

after resigned his executorship, and I cannot say whether or not his final account shows the credit to Neill of six hundred dollars and charges that amount to the heirs; but it was understood by us at the time, that this would be done, at least as soon as Neill called for a settlement or had one with the estate.

The deposition of McHenry and the special finding in the suit of Hunt, administrator, v. Neill, showed that Neill was not credited by McHenry, nor by Hunt, for the six hundred dollars.

The other facts appear from the Opinion.

*J. J. Thornton,* for plaintiffs in error.

*J. Ireland,* for defendant in error.

LIPSCOMB, J.   This suit was brought by the appellee against the appellant Bracken, and by a supplemental petition, Hunt, the administrator of the brother of the appellant, with the will annexed, alleging that the appellant was one of the heirs of the said Hunt's testator, and that without being secured from the amount of his portion of the estate, he would not be able to collect his debt if he should recover judgment; and Hunt was enjoined from selling the land belonging to the estate. The suit against Bracken was for a fraud and breach of trust, in failing to pay over an amount of money, which he had received from Neill, the plaintiff, in trust to be paid by Bracken to McHenry, at that time the executor of the estate of the deceased Bracken.   It was alleged that the said defendant had receipted for the sum, and promised to deliver it to McHenry, and failed to do so, and that thereby the plaintiff had sustained very great damage.   There was a verdict for the plaintiff for the amount of the receipt and interest, and damages to the amount of one hundred dollars, the amount of the attorney fee

paid by Neill, for which judgment was awarded against Bracken, and the injunction was dissolved and dismissed as to Hunt, at his, Hunt's, costs.

The first error assigned, which we propose to discuss, is the excluding the evidence taken by the interrogatories to A. H. Philips, offered by the defendant below. Interrogatories, to be answered by the witness, were filed and had been crossed by the plaintiff, and a commission had issued to the Clerk of the District Court of the county of Victoria, to take the answers to the same, and make a return to the District Court of the county of Guadalupe. The commission was executed by the Clerk of the District Court of Gonzales county, where the witness was at the time attending Court, and returned by him. The evidence had been properly offered, and no objection made, by notice or otherwise, to them, until offered to be read on the trial, and then the objection was made and sustained, on the ground that the commission had been executed and returned by the Clerk of Gonzales county, to whom the commission had not been directed.

We believe the objection was made too late to have been received. It was in direct opposition to our Statute, to have received such objection, without giving previous notice of it. Article 773, Hart. Dig. is as follows, i. e. "No objection to the "form of depositions, or to the manner of taking them, in any "suit, shall be heard, unless they are in writing, and notice "thereof is given to the opposite counsel, before the trial of "the suit commences." (See Haggarty v. Scott, 10 Tex. R. 525, and same vol. 520.)

It may, however, be said that the evidence of the witness could not have changed the result, as it would have established the liability of the defendant to the plaintiff; to which it may well be answered, that although it would have shown a liability, yet, that liability would have been of a different character, and would have changed the verdict, so far as it gave the special damage of the attorney's fee, found by them. This damage

was given upon the supposition that the defendant below had
been guilty of a fraudulent breach of trust in not paying over
money that he had received from the plaintiff under a promise
contained in his receipt to pay it over to McHenry, the execu-
tor, to whom the plaintiff was indebted.   The evidence would
have proven that no money had been received, but that being
indebted to Neill, the plaintiff, he had promised to pay that
amount for him to McHenry.   His failing to do so would not
have amounted to a fraudulent breach of trust, entitling the
plaintiff to recover special damage; but it would have been
only evidence of the amount promised to be paid; and the
amount with damages equal to the interest, would have been
all the plaintiff could have recovered.

On the trial, the plaintiff offered in evidence and read,
though objected to by the defendant, the answer of McHenry
to an interrogatory propounded to him, in a suit between
Hunt, administrator, with the will annexed, of Bracken, de-
ceased, and Rogers and others, without showing that McHenry
was dead, or showing that Bracken, the defendant below, was
a party interested in the result of that suit.   It is not shown
what was the subject matter of the suit.

We believe the Court below erred in receiving such evi-
dence, because it does not follow, that because the defendant
was one of the heirs, he was a privy or indirectly a party to
the suit, because the administrator with the will annexed was;
and he cannot be affected by evidence given in that suit.   He
had no opportunity to cross-examine the witness, and there-
fore ought not to be affected by this testimony.   (See Greenl.
Ev. Sec. 189 ; 2 Phil. Ev. 8 and 9.)

The plaintiff also was permitted, though objected to by the
defendant, to read the finding of the jury of a special part in
that case.   In this, too, we believe the Court below erred, for
the same reason, that he was not a party to it.

We believe that the Court also erred in rendering judnment
for costs against Hunt, the administrator on dissolving and

dismissing the injunction. He was acting in a representative capacity, and was arrested in closing the estate, at the instance of the plaintiff below, and does not appear to have thrown any embarrassment in the way of the plaintiff, in the adjudication of his claim, and it is very questionable whether the injunction ought to have been granted at all, but if granted, it ought not to prejudice others who had no interest in the proceedings. We therefore believe that the costs of the injunction ought to have been adjudged against Neill, for whose benefit it had been granted, to the prejudice of disinterested persons in the litigation between Neill and Bracken. The judgment for costs of the injunction against Hunt, must be reversed also, and it can here be rendered against Neill for the costs.

We believe that Neill may, notwithstanding the errors noticed, sustain his judgment, by entering a *remittitur*, in this Court, for the one hundred and fifty dollars, the special damage found by the jury. We have never much regarded the distinction in actions; and as the evidence clearly shows that he is justly entitled to the amount that Bracken, the defendant, promised to pay for him to McHenry, we can perceive no objection to the judgment standing for that amount, after deducting therefrom the special damage before noticed ; but, in consideration of the errors in the Court below, it must be at his costs. If the *remittitur* is so entered, the judgment will be affirmed as to him, but reversed and rendered, as to Hunt, as before stated; if not, the judgment will be a general reversal, and the cause remanded.

Reversed and re-formed.