Howard Insurance Co. v. Owen's Admr'x.

CASE 29—PETITION ORDINARY—MARCH 18.

94  197
100  36
94  197
113  626
113  627

# Howard Insurance Co. v. Owen's Admr'x.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. INSURANCE—AUTHORITY OF AGENT.—The possession by an insurance agent of blank policies, signed by the president and secretary of the company, afforded evidence of his general agency sufficient to justify a person to make a contract of insurance with him, and to accept a policy delivered by him.

2. THE POWER OF AN AGENT CAN NOT BE LIMITED BY SPECIAL PRIVATE INSTRUCTIONS so as to affect a contract of insurance, unless the insured had notice, or there is something in the nature of the business or circumstances of the case to indicate, that the agent acted under such special instructions.

3. AUTHORITY TO INSURE PROPERTY IN "VICINITY" OF CITY.—Where an insurance agent was empowered to make contracts of insurance upon property in a certain city and "vicinity," if there was any doubt as to the power of the agent to insure property in a village ten miles distant from the city named, it would be removed by the conduct of the insurance company in sanctioning contracts insuring other property in that village.

4. A VERBAL CONTRACT TO ISSUE A POLICY IS VALID AND ENFORCEABLE, and if the insured property is destroyed by fire before the issual of the policy under the contract a court of equity having jurisdiction to decree specific performance will, to avoid unnecessary circuity, adjudge damages just as if the policy had been executed, and an action had been brought on it for loss of the thing insured.

5. SAME—WAIVER.—The making of a written application for insurance was not a waiver by the applicant of his right to a policy under a verbal contract previously made with the agent through whom the application was forwarded, it being expressly agreed by the agent that the only purpose of the application was to describe the property. Therefore, the fact that the application was rejected by the company, and the agent instructed not to issue a policy, does not affect the right of the insured to recover upon a policy delivered by the agent in express violation of that instruction, as the agent, in delivering the policy, did only what a court of equity would have compelled the company to do.

AUGUSTUS E. WILLSON FOR APPELLANT.

1. Prior verbal negotiations were merged in written application. (Castleman v. So. Mu. Life Ins. Co., 14 Bush, 197.)

Howard Insurance Co. v. Owen's Admr'x.

2. Parol testimony was inadmisible to modify the application. (Insurance Co. v. Holzkraft, 53 Ill., 516; Castleman v. So. Mu. Life Ins. Co., 14 Bush, 197.)

3. Agent had no power to insure after fire. (Stebbins v. Lancaster Ins. Co., 60 N. H., 65; Bentley v. Columbia, &c., 17 N. Y., 421.)

4. Declarations of agent after fire were inadmisible. (Kock v. Godshaw, 12 Bush, 320; Roberts v. Burke, Litt., Sel. Cas., 411; Clay v. Swett 4 Bibb., 253; Murphy v. May, 9 Bush, 36; Davis v. Whitesides, 9 Dana, 177; McLeod v. Ginther, 80 Ky., 403; Walker v. Ins. Co., 51 Ia., 679–82.)

5. Owen's offer or application imposed no obligation on the company until accepted. (St. Louis Ins. Co. v. Kennedy, 6 Bush, 450–5; Ins. Co. v. Young, 23 Wall., 85–106; Strohn v. Hartford, &c., Co., 37 Wis., 629; Trustees v. Bushnell, &c., 28 N. Y.. 153; Neville v. Ins. Co., 17 Ohio, 452–60; Myer v. Keystone, &c., Co., 27 Pa. St., 268.)

6. Burden was on plaintiff to prove the contract and agent's authority. (Brown v. Mass. Ins. Co., 12 Ins. Law J., 208–13; Hays v. Lynn, 7 Watts, 524; Moore v Patterson, 28 Pa., 505; Underwriters v. George, 97 Pa., 236; Am. Life v. Schulz, 82 Pa., 46.)

7. Delay in accepting could not make a contract of the proposal or application. (Ins. Co. v. Johnson, 23 Pa. St, (11 Hains, 72.)

8. Analogous cases: Harp v. Granger's Co, 49 Md., 307; Walker v. Farmer's Ins. Co., 51 Ia., 679; Real, &c., v. Rossle, 1 Gray, 336.)

WM. LINDSAY OF COUNSEL ON SAME SIDE.

R. H. CUNNINGHAM, BULLITT & SHIELD FOR APPELLEES.

1. Contracts "to insure" must be enforced. (25 Connecticut, 207; 5 Pa. St., 339; 17 Iowa 276; 27 Barbour, 312; 4 Cowan (N. Y.), 645; 2 Deutch, N. J., 268 and 541; 3 Deutch, N. J., 645; 55 N. H., 335; 5 Ind., 96; 76 Mo., 371; 19 Howard, U. S., 318; 23 Wend., 18; 6 Bush, 455; 7 Bush, 81; 20 Wall., 560; May on Insurance; Lawson's Rights, Remedies and Practice, vol. 5, pages 3496–7; May on Insurance, 3d edition, secs. 14 to 23 and 44 and 45.)

2. Insurance may be by parol. (3 Am. Rep. (note), 305; Wood on Insurance, 4; 96 Am. Dec., 83; 10 Am. Rep. (note), 205; 19 Howard, 318; 77 Am. Dec., 419; 19 Am. Rep. (note), 309; 7 Bush, 86; 99 Am. Dec., 145; 25 Am. Rep. (note), 93; 9 Howard, 390; 39 Am. Dec., 542; 17 Am. Rep., 322; 94 U. S., 574; 11 Am. Rep., 125; 20 Wallace, 560; May on Insurance, 3d edition, sec. 43 and seq.)

3. Agent may decide what company insures and enter in books. (Wood, 8, note, & 25.)

4. Agent may bind company, though he has no authority to make out policy. (Wood, 9; May, 57.)

5. If mistake in the policy is the fault of the agent, the company is bound. (13 Wallace, 407.)

Howard Insurance Co. v. Owen's Admr'x.

6. Oral evidence admissible to prove it. (13 Wallace, 230–1.)

7. Where acts of agent will bind his principal, his representations and declarations and admissions will also bind him if made at the same time, and constituting part of the *res gestæ*. (1st Greenleaf, "Evidence," 113; Story, Agency, 134, 137; 21 Howard, 164.)

8. May prove that printed instructions to agent on application was not read by or to, or explained to or understood by, assured, and he is not bound thereby. (Adams Express Co. v. Nock, 2 Duv., 562); Trainor v. Morrison, 57 Am. Rep., 790, and Cases Cited.)

9. Agent's contracts out of his "vicinity" bind company. (May, 130.)

10 Authority to accept risks, issue policies, &c., make general agent, and possession of blank policies is evidence of agency. (May, 126.)

11 Application generally. (May, 120.)

12. Evidence of dead witness. (1st Greenleaf, 165–6.)
    Deposition of dead witness. (1st Greenleaf, 516.)

13. Difference between "of" and "for" insurance. (Wood, 10 and 11; 6 Bush, 450.)

14. Agent may issue policy after loss. (Wood, 10; 20 Wallace, 560; 7 Bush. 81; May, secs. 45, 453, 44 and 128.)

15. Agent bound to deliver policy after loss. (Wood, 31.)

16. Secret limitations of agent's power do not prevent third persons from dealing with him to the full extent of his apparent power. (Wood, 390; 13 Wallace, 222; 4 Cowan, N. Y., 645.)

17. By issuing policies on prohibited risks agent may bind the company to the assured. (Wood, 398; 6 Bush, 180.)

18 Meaning of word "vicinity." (May, sec. 130.)

19. Agent's knowledge of the facts binds the company, although the assured innocently made misrepresentations. (Wood, 400; 13 Wallace, 222)

20 Where agent knew powder and petroleum were kept, and permission to keep same was omitted from policy by his fault, keeping them in usual quantities did not avoid policy. (Mobile Fire Ins. Co. v. Miller, 58 Ga., 420; Wood, sec. 400; May, secs. 130 and 131.)

21. When an agent knows facts of the risk (coal oil, &c.), and fails to provide therefor, his knowledge is knowledge of the company, and it can not set up such facts as defense. (Wood, 403, p. 678; 16 Ben Monroe, 242; May, 130.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT

February 24, 1884, appellee, J. V. Owen, residing and having a store-house in the village of Corydon, Henderson county, communicated by telephone with R. G. Adams, agent, at the city of Henderson, ten

miles distant, of appellant, the Howard Insurance Company, about obtaining a policy of insurance on his building. And it was on that occaion agreed by Adams to insure it for one year for the amount and at the consideration fixed upon by them, Owen being informed by Adams, in substance, and relying upon the assurance, that the contract was made and his store-house then insured by the Howard Insurance Company. But about February 29, Adams requested Owen to make a formal application to the company for the insurance, and sent the blank for that purpose by his special solicitor, Hardwick; though at the same time Owen was assured his right under the verbal contract should not be thereby impaired.

Owen did, as requested, fill up and sign the application, showing situation and character of his house, and delivered or sent it to Adams, who forwarded it to the general manager of the company at Toledo, O.

March 6 Adams made entry of the verbal contract in the policy register kept by him for such purpose, of which he notified Owen. And March 13 he again notified him his property was insured, and also that a written policy, made out in pursuance of the verbal contract, would be sent to him as soon as a supply of blanks, of which he then had none, was received from headquarters of the company.

March 15, Adams having received the policy already signed in blank by the president and secretary of the company, filled up and countersigned it himself as agent. But March 15, at night, after execution, but prior to delivery, of the policy to Owen, the store-house was totally destroyed by fire.

It appears the general manager at Toledo, upon receiving the application made February 29, rejected it, and by letter dated and mailed March 12 to Adams at Henderson, notified him of the rejection. Nevertheless, March 17, Adams accepted from Owen the amount of premium previously agreed upon, though not before paid, and delivered to him the policy running from March 6 for one year; and this action was brought to recover on it the amount for which it is alleged the store-house was insured.

On the former appeal, this being the second, the single question was as to sufficiency of the plea of limitation sustained by the lower, though decided adverse to defendant by this, court. But we are now required to revise a judgment in favor of plaintiff for amount sued for.

The statute of frauds has no application to the case, nor does the petition contain two distinct causes of action, as counsel argues. In Security Fund Ins. Co. v. Kentucky Marine Ins. Co., 7 Bush, 81, it was held by this court, in accordance with established doctrine, that "a contract to issue a policy as an executory agreement to insure may be binding without any written memorial of it;" and further, that "a court of equity having jurisdiction for specific enforcement, would, to avoid unnecessary circuity, adjudge the damages just as if a policy had been executed; and an action had been brought on it for loss of the thing thereby insured."

This action is not, however, based at all upon the verbal agreement, but alone upon the policy executed and delivered in pursuance of it; and evidence in

regard to terms of that agreement, and circumstances under which it was made, would be neither necessary or pertinent, except for the purpose of determining the decisive question, whether Owen was legally entitled to the policy, and Adams had authority and was bound to deliver it at the time he did so.

On the trial the jury was instructed that "Adams was general agent of defendant for the purpose of making contracts of insurance and issuing policies of insurance for the defendant against loss or damage by fire upon property situated in Henderson, Kentucky, and *vicinity*, subject to the limitations contained in the paper entitled Instructions for Agents, filed with deposition of Adams, and read in evidence."

It seems to us the defendant had no cause to complain of that instruction, because Adams was, in terms of the paper referred to, appointed its agent, and empowered to make contracts of insurance and to issue policies of insurance. Besides, his possession of blank policies, signed by the president and secretary, afforded evidence of his general agency sufficient to justify a person making a contract of insurance with him, and in accepting and treating as valid and enforceable a policy issued and delivered by him. The qualifying clause of that instruction would, however, have been prejudicial to plaintiff, if not explained by other instructions, which seems to have been done; for the power of an agent can not be limited by special private instructions so as to affect a contract of insurance, unless the insured had notice, or there is something in the nature of the business or circumstances of the case to indicate, the

agent acted under such special instructions. (May on Insurance, section 126.)

Very many exceptions to rulings at the trial on competency of evidence were taken, and are now urged as reasons for reversal of the judgment; but we need not refer to them in detail, because satisfied, after examining the bill of exceptions and evidence, that the facts we have recited were beyond question established by evidence entirely competent; and as these facts clearly involve an agreement between Owen and Adams for insurance by defendant of the store-house in question, and for delivery of a policy of insurance, and also authority of Adams to make the contract and deliver the policy, there necessarily follows the right of Owen to recover the amount at which the property was agreed to be insured, unless he did some subsequent act equivalent to a waiver or estoppel of his right to the policy, or acted in bad faith or collusion with Adams to defraud the Howard Insurance Company; for if he was, in virtue of the parol agreement, entitled to the policy, he was not deprived of that right; nor was the company released from its contract to deliver it by reason of intervening destruction of the property insured. A question is, however, made as to the meaning and comprehensiveness of the word *vicinity* used in the letter of Adams' appointment as agent; but it seems to us if there was any doubt about authority of Adams as agent to make contracts for insurance of property in the village of Corydon, it would be removed by the conduct of defendant sanctioning contracts for insuring other property in that place, which appears from evidence in this case was done.

Although ordinarily an application for insurance would tend strongly to show the contract to insure was not completed, and that the right of a company to decline making it still existed, yet in this case the evidence is that it was distinctly agreed by Adams the application was intended simply as description of the property, and would not impair Owen's right under the previous parol agreement, nor release the company from its obligation thereby incurred; and if the application was made by Owen under such circumstances and upon such assurance, we do not see how that act can be now construed as a waiver of his right to the policy already acquired by the parol contract, or as a release of the company. It appears that the store-house of Owen was in a range of frame buildings, and Adams was, in his letter of instructions, forbidden to insure property so situated; and, therefore, the general manager probably would, if informed of the fact pending negotiations between Adams and Owen, have prohibited consummation of the contract, as he did reject the application when received by him. But it appears Adams was acquainted with the condition and situation of the property at the time he agreed to insure it, and as the company gave him authority to make the contract of insurance and for delivering the policy, it should suffer for any apparent or real breach of trust by its agent, and not Owen, the insured, who relied and acted upon the faith of the agreement. There is no evidence that Owen had notice of such restriction or limitation of the authority of Adams as agent, or that he acted in bad faith in any respect whatever, and the jury so found.

It appears that the letter of the general manager rejecting the application was received by Adams before delivery of the policy, but after the property was destroyed. But if defendant was legally bound by agreement of its agent to deliver the policy, and Owen's right to it had become vested before destruction of the property insured, then Adams did no more in delivering it, March 17th, than a court of equity would have compelled the company to do.

Whether Owen was entitled to the policy, and as a consequence the right to recover on it, was a question to be determined by the jury under instructions of the court, which appear to us to fully and accurately cover every issue; and as there is scarcely any room for controversy about any material fact in the case, the verdict of the jury in favor of plaintiff was inevitable.

·Judgment affirmed.