GERMAN FIRE INSURANCE COMPANY OF FREEPORT, ILLINOIS, v.
GIBBS, WILSON & COMPANY.

Decided March 24, 1906.

**1.—Commission to Take Deposition—Officer.**

The commission to take depositions being directed to any notary public
of C. Parish, the taking of the deposition by a notary public of N. Parish
was not a taking by the officer to whom the commission was directed, and the
deposition was properly quashed.

**2.—Suit on Policy—Parties—Creditor.**

Where a policy of fire insurance stipulated on its face the person to whom
the loss is payable, such person may sue alone and recover the entire loss.
Neither the assured or his legal representatives are necessary parties to the
suit. A creditor, holding the policy as collateral security, may sue alone.

**3.—Rights of Beneficiary in Policy—Acts of Assured.**

A clause in a policy of fire insurance making the loss under it payable
to a person therein named, gives such person an interest in the policy of which
he can not be deprived without his consent. Where the insurance company
paid into court a certain amount of money, which it claimed was the extent
of its liability, and the assured, without the knowledge or consent of the party
to whom the loss was payable, demanded and received said deposit and at-
tempted to release the company from further liability, the rights of the
beneficiary in the policy were not prejudiced thereby.

**4.—Proof of Loss—Value of Property—Adjustment—Charge.**

Where plaintiffs alleged an adjustment of the loss under a policy of fire
insurance, and ask for judgment for the amount due as fixed by said adjust-
ment, the "proof of loss" constituted part of the adjustment, and the adjust-
ment was evidence of the value of the goods destroyed, and prima facie proof
of the amount due; therefore a requested charge to the effect that the jury
should not consider the "proof of loss" as evidence of value would have been
misleading, and was properly refused.

**5.—Insurance Policy—Assignment—Evidence.**

A fire insurance policy may be orally assigned after loss thereunder; hence
evidence that the insured, after the fire, recognized the right of an assignee
to the proceeds was competent.

**6.—Suppressed Deposition—Not Evidence as Admissions—Declaration of As-
signor.**

Depositions which have been suppressed because taken by an unauthorized
officer can not be introduced in evidence to prove an admission of the witness
against his interest without independent proof that the witness made the
statements contained in the deposition. The certificate of the officer is not
evidence of this fact. Declarations of an assignor after sale are not admis-
sible against his assignee.

**7.—Suit Upon Adjustment of Loss—Evidence.**

A suit to recover upon an adjustment of a loss under a policy of fire
insurance is based upon a new and independent contract, and not upon the
policy; and the insurer can defeat such action only by showing fraud or mis-
take in the adjustment unknown to the insurer at the time of adjustment, and
which could not have been discovered by the use of reasonable diligence.

**8.—Charge—Not on Weight of Evidence.**

A charge which instructed the jury to find for plaintiff unless they found
for defendant on one or more of the issues submitted, is not upon the weight
of the evidence where by the face of the policy the loss is payable to the

plaintiffs, and the evidence showed an adjustment of the loss by defendant's agent.

### 9.—Nonwaiver Clause.

A nonwaiver clause in a policy of insurance will not be extended beyond its plain terms, and has no application after an adjustment of the loss.

### 10.—Adjustment of Loss—Knowledge of Facts.

That the company had no knowledge of facts which might, if known, have defeated the claim, is of no avail, if the insurer might have known them upon inquiry at the time of adjustment, and was not fraudulently prevented by the insured.

### 11.—Instructions to Agent—Knowledge of Insured.

A failure of an agent to obey instructions of his company will not defeat a recovery on the policy where such disobedience is not known to the insured.

### 12.—Contract of Insurance—Loss Payable Clause.

A policy of insurance remains a contract between the insurance company and the person originally insured, notwithstanding the subsequent insertion of a clause making the loss, if any, payable to another person.

### 13.—Dual Agency.

Facts considered, and held not sufficient to show that the person acting as agent of the company at the time the policy of insurance was issued, was also agent for the insured.

### 14.—Fraud—Repudiation of Contract.

Facts considered, and held to show that the insurance company did not promptly repudiate the contract of insurance made by its agent upon discovery of the fraud, if there was any fraud.

Error from the District Court of Limestone County. Tried below before Hon. L. B. Cobb.

*Carden, Senter & Carden,* for plaintiff in error.—Where a policy is voidable at the election of the insurer because of circumstances connected with its issuance, it may exercise its election after the fire, when it discovers such fact, by returning the premium to the insured, though the policy should be held at the time by a creditor of the insured as collateral security for a debt owing by him to such creditor. Smith v. International & G. N. Ry., 78 S. W. Rep., 557; Joy v. Liverpool, L. & G. Ins. Co., 74 S. W. Rep., 825; Hamburg-Bremen Fire Ins. Co. v. Ruddell, 82 S. W. Rep., 826; Wunderlich v. Palatine Fire Ins. Co., 80 N. W. Rep., 473.

The written declarations of the insured, although supported by affidavit, can not be offered as evidence upon questions relating to the ownership or the value of the property covered by the policy. Lion Fire Ins. Co. v. Starr, 12 S. W. Rep., 45; Home Ins. Co. v. Stone River Bank, 12 S. W. Rep., 916; Hiles v. Hanover Ins. Co., 27 N. W. Rep., 348; Insurance Co. v. Stibbu, 46 Md., 302.

The admissions of the insured, made after a loss, which show a breach of the terms and conditions of the policy before the loss, are admissible in favor of the insurance company against a claimant of the policy holding it as collateral security for a debt due from the insured. Joy v. Liverpool, L. & G. Ins. Co., 74 S. W. Rep., 825; Atkins v. New York Life, 62 S. W. Rep., 563; Smith v. International & G. N. Ry.

Co., 78 S. W. Rep., 557; Parker v. Chancellor, 15 S. W. Rep., 158; Hamburg-Bremen Fire Ins. Co. v. Ruddell, 82 S. W. Rep., 826; Wunderlich v. Palatine Fire Ins. Co., 80 N. W. Rep., 473.

The declarations of the insured, made after a loss, are admissible to show want of title in him to the property insured, although the loss may be payable under the terms of the policy to his creditor. Clapp v. Engledown, 10 S. W. Rep., 462.

Where the insured is dead, and no other evidence is available to show the ownership of property covered by the policy, his declarations with respect thereto are admissible as the best evidence obtainable, although the policy has been pledged with his creditor as collateral security, especially, as in the case at bar, where such declarations are against his interest as tending to defeat the payment of his debt and thereby lessen his estate. Heidenheimer v. Johnston, 13 S. W. Rep., 47.

The court erred in that paragraph of its charge to the jury in which it charged the jury in substance as follows: "You are instructed that on October 15, 1901, F. W. Hewitt was insured by defendant in a sum not exceeding $2,000, for the term of one year, upon certain property in Kosse, which plaintiff says was destroyed by fire on or about November 30, 1901; that by the policy the loss, if any, was payable to Gibbs, Wilson & Co., and that there was an adjustment of the loss made by Hewitt and an agent of defendant on December 10, 1901, fixing the same at $1,655.25, and you will find for plaintiff the said sum, with interest at the rate of six percent per annum from February 10, 1902, unless you shall find for defendant under some one or other of the issues hereinafter submitted." Curlee v. Texas Home Fire Ins. Co., 73 S. W. Rep., 831; American Central Ins. Co. v. Nunn, 82 S. W. Rep., 497.

Under the undisputed facts of the case, the policy was made voidable at the election of the insurance company, because it was issued by Gibbs, as manager of plaintiffs' bank, for the benefit and protection of the bank, upon the property of an insolvent or financially crippled debtor, and Gibbs, while pretending to act in the transaction as agent of defendant, concealed these facts from it, though it was his special duty under the rules of defendant to report them. Phoenix Ins. Co. of Brooklyn v. Willis, 6 S. W. Rep., 325; Bunton v. Palm, 9 S. W. Rep., 182; Scripture v. American Scottish Mort. Co., 49 S. W. Rep., 644; British-American Assur. Co. v. Cooper, 40 Pac. Rep., 147; Joyce on Insurance, sec. 661.

No evidence was offered to show that Easley ever saw or examined Hewitt's books, and hence the jury should have been instructed that his acts with reference to the ascertainment of loss did not constitute a waiver of the provisions of the iron-safe clause. Planters' Mutual Ins. Co. v. Loyd, 56 S. W. Rep., 44; Continental Ins. Co. v. Cummings, 81 S. W. Rep., 707.

Under the terms and provisions of the policy, the acts of Easley, in connection with the reputed adjustment of the loss, could not and did not operate as a waiver of any defense to the policy the company had, or any right in it to declare the policy void for breach of its terms. American Central Ins. Co. v. Nunn, 82 S. W. Rep., 497.

The agreement in the proof of loss submitted by Hewitt to defendant, to the effect that the making up of such proofs by the adjuster

should not operate as a waiver by the company, prevents such result, even though the adjuster may have learned while making or assisting to prepare such proofs of facts which would, if pleaded, avoid the policy. American Central Ins. Co. v. Nunn, 82 S. W. Rep., 497; Curlee v. Texas Home Fire Ins. Co., 73 S. W. Rep., 831.

*Z. I. Harlan* and *W. T. Jackson,* for defendant in error.—Where, as in this case, by the contract of insurance itself, the loss under the policy is to be paid to a person named in it, and other than the insured, the person to whom the loss is payable may alone sue and recover the entire loss under the policy, and neither the assured nor his legal representatives are necessary parties to the suit. Allison v. Phoenix Ins. Co., 87 Texas, 596; Pacific Mut. L. Ins. Co. v. Williams, 79 Texas, 637, 638; Georgia Home Ins. Co. v. Leaverton, 33 S. W. Rep., 579; Joyce on Insurance, vol. 3, par. 2305, note 5; Clements on Fire Insurance, 39, rule 13.

Treating the policy as collateral security for Hewitt's indebtedness to plaintiffs, that debt exceeded in amount the sum at which the loss was adjusted, and plaintiffs, as holders of the security, could sue alone and recover the loss under the policy. Panhandle Nat. Bank v. Security Co., 18 Texas Civ. App., 105, 106; Georgia Home Ins. Co. v. Leaverton, 33 S. W. Rep., 579; Donalson v. Sun Mut. Ins. Co. (Tenn.), 32 S. W. Rep., 251; 13 A. & E. Ency. Law (2d ed.), 201, note 6; Greene v. Republic Ins. Co., 84 N. Y., 572.

The proofs of loss constituted a part of the adjustment. The adjustment was evidence of the value of the goods destroyed and prima facie proof of the amount due, and a charge such as suggested would have been misleading and erroneous as against defendants in error. Fire Association v. Blum, 63 Texas, 285; Joyce on Insurance, vol. 4, par. 3771.

A deposition which has been quashed is inadmissible as evidence for any purpose. Joy v. Liverpool, L. & G. Ins. Co., 74 S. W. Rep., 822; Gross v. Coffey, 111 Ala., 468, 20 So. Rep., 428; 1 A. & E. Ency. Law (2d ed.), 718, note; Carlisle v. Davis, 9 Ala., 858; 6 Ency. P. & P., 541.

The adjustment of the loss under the policy constituted a settlement between insurer and insured, which, like any other settlement, could not be avoided, and matters growing out of the original contract of insurance made a defense against a recovery on the adjustment, except upon the ground of fraud or mistake in the adjustment, and there being no evidence introduced on the issue of fraud or mistake in the adjustment, and the statement offered and excluded tending to prove neither fraud nor mistake in the adjustment, but only a defense under the original contract of insurance, its exclusion, if error at all, was immaterial and not ground for reversal. Ostrander on Fire Ins. (2d ed.), par. 213; Joyce on Ins., vol. 4, par. 3743; May on Ins., vol. 2, par. 442; Smith v. Glen Falls Ins. Co., 62 N. Y., 86; Stache v. St. Paul Fire Ins. Co., 49 Wis., 89, 35 Am. Rep., 773; Altgelt v. Brister, 57 Texas, 436, 437.

Hewitt, the assured, after the loss had occurred, could not, by an assignment of his claim against the company, defeat the rights of Gibbs, Wilson & Company, the payees under the "loss payable" clause in the policy. Security Co. v. Panhandle Nat. Bank, 93 Texas, 582; Pan-

handle Nat. Bank v. Security Co., 18 Texas Civ. App., 106; Joyce on Ins., vol. 3, par. 2321.

In order to render a breach of the iron-safe clause in the policy available as a defense to this suit upon the adjustment, it must first have been shown by defendant, by clear proof, that the adjustment was made by its adjuster in ignorance of that breach. The charge complained of was more liberal towards defendant in this respect than the law required of it, and it can not complain. Fire Association of London v. Blum, 63 Texas, 285; Ostrander on Fire Ins., par. 213; Joyce on Ins., par. 3743; May on Ins., vol. 2, par. 442; Smith v. Glen Falls Ins. Co., 62 N. Y., 85.

Instructions from the company to its agent not to write certain risks will not avoid a policy on such prohibited risk unless it is shown that the insured had knowledge of such inhibition May on Ins. (4th ed.), vol. 1, par. 126; Joyce on Ins., vol. 1, par. 428; Joyce on Ins., vol. 1, par. 659; 16 A. & E. Ency. Law (2d ed.), 917, and note 2; Howard Ins. Co. v. Owens (Ky.), 21 S. W. Rep., 1037.

The adjustment itself was evidence of the amount due on account of the loss under this policy, and sufficient of itself, if not rebutted, to make prima facie proof of the amount of such loss. Fire Association of London v. Blum, 63 Texas, 285; Joyce on Ins., vol. 4, par. 3771.

The premium on the policy having been paid by the insured and received by the company, if there was any conflict in his interests or duties, it was the duty of the company, when it first learned that the policy had been issued by J. B. Gibbs, its local agent, for the benefit and protection of plaintiffs, to repudiate his acts as its agent and tender back the premium received by it. This it failed to do, and must now be held to have ratified its agent's acts. Hanover Fire Ins. Co. v. Shrader, 11 Texas Civ. App., 259, 260; Georgia Home Ins. Co. v. Smithville, 49 S. W. Rep., 412; Morrison v. Insurance Co. of North America, 69 Texas, 363.

Easley, defendant's adjuster, was the insurance company itself in making the adjustment; his acts were those of the company, and whatever knowledge he acquired during the adjustment was the knowledge of and was chargeable to the company. Sisk v. American Cent. Ins. Co. (Mo.), 69 S. W. Rep., 692; Couch v. Home Protection Ins. Co., 73 S. W. Rep., 1078; Roberts v. Sun Mutual Ins. Co., 35 S. W. Rep., 956, 957.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was originally instituted by the Rotan Grocery Company against the German Insurance Company and Gibbs, Wilson & Company, a firm alleged to be composed of J. B. Gibbs, Laura C. Gibbs and Lucy C. Wilson, owners of the Merchants' and Farmers' Bank of Kosse, Texas, to recover a judgment on a policy of insurance for $2,000, issued to one F. W. Hewitt. Subsequently the Rotan Grocery Company disclaimed any interest in the policy, and the suit was continued in the name of Gibbs, Wilson & Company, as plaintiffs, and the insurance company as defendant. The plaintiffs alleged an adjustment of the loss at $1,655.25 under the policy, and sought to recover the amount of such adjustment. The de-

fendant plead in abatement, general denial and various other defenses, the nature of which will appear in the opinion.

A trial resulted in a verdict and judgment for plaintiffs, and defendant perfected a writ of error to this court.

*Opinion.*—It is contended that the court erred in refusing to set aside the judgment rendered at a preceding term of the court, suppressing the deposition of F. W. Hewitt and reinstate said deposition The depositions of Hewitt, the insured, were taken on the 16th of January, 1904, by a notary public of Natchitoches Parish, Louisiana, on a commission addressed "to any clerk of a court of record having a seal, or any notary public of Caddo Parish, Louisiana, or any commissioner of deeds duly appointed under the laws of Texas, within and for said State of Louisiana." The depositions were suppressed on the ground that they could not be lawfully taken by a notary public in and for Natchitoches Parish on a commission thus addressed. The statute provides that, "upon the appearance of the witness, the officer to whom the commission is directed shall proceed to take his answers." (Rev. Stats., art. 2284.) The commission in this case having been directed to any notary public of Caddo Parish, the taking of the depositions by a notary public of Natchitoches Parish was not a taking by the officer to whom the commission was directed, and was unauthorized. (Bracken v. Neill, 15 Texas, 109; 6 Ency. Pl. & Prac., 502.) The court did not err in refusing to reinstate the deposition.

The court did not err in sustaining the plaintiffs' exceptions to the defendant's plea in abatement. The plea alleged in substance that Hewitt, the insured, had died since the institution of the suit intestate; that there was no administration upon his estate; that his only heirs were his father and mother, Benjamin Hewitt and wife, residents of Limestone County, Texas; that they were interested in the proceeds of any judgment that might be recovered upon the policy. The policy of insurance provided that the loss, if any, was payable to Gibbs, Wilson & Company. This clause was written in the policy at the time it was issued. The plea in abatement sought to abate the suit because the heirs of the assured were not made parties. The policy having stipulated on its face the person to whom the loss is payable, such person may sue alone and recover the entire loss, and neither the assured nor his legal representatives are necessary parties to the suit. (Allison v. Phoenix Ins. Co., 87 Texas, 596; Pacific Mut. Life Ins. Co. v. Williams, 79 Texas, 637, 638; Joyce on Insurance, vol. 3, par. 2305, note 5; Donalson v. Sun Mut. Ins. Co. (Tenn.), 32 S. W. Rep., 251.)

Again, at the time the policy was issued, and at the time of the fire, Hewitt was indebted to Gibbs, Wilson & Company, defendants in error, in a sum largely in excess of the face of the policy, and is still so indebted to them. If defendants in error held the policy as collateral security for an indebtedness, largely in excess of the face of the policy, they alone could sue and recover for the loss. (Panhandle Nat. Bank v. Security Co., 18 Texas Civ. App., 105, 106; Georgia Home Ins. Co. v. Leaverton, 33 S. W. Rep., 579; 13 A. & E. Ency. Law (2d ed.), 201, note 6; Greene v. Republic Ins. Co., 84 N. Y., 572.)

The defendant plead that plaintiff, under the terms of the policy, is merely a trustee for Hewitt; that soon after the suit was instituted, on or about June 30, 1902, the defendant tendered into court and paid the clerk the sum of $87, being the amount of the premium paid for the policy, for the benefit of whoever might be shown to be entitled thereto; that soon after said tender was made Hewitt demanded and received from the clerk of the court the amount of said tender, and took the same in full satisfaction of any and all claims arising under the terms of the policy against defendant, and thereby canceled and annulled it. To this plea plaintiffs excepted, and the court sustained the exception, and this action is assigned as error.

The loss under this policy was payable, unconditionally, to Gibbs, Wilson & Company. The policy was attached to plaintiffs' petition as an exhibit. After the fire, which destroyed the property insured, Hewitt still recognized the loss as being payable to plaintiffs, and directed them to collect and apply it on his debt to them. Plaintiffs' petition, filed June 30, 1902, set up all these facts in this suit. On July 11, 1902, defendant tendered and paid into the hands of the clerk of the court, in which this suit was pending, $87, the amount of the premium paid for said policy, for the benefit of whoever it might be shown and decided on the trial to be entitled thereto, and pleaded such tender and asked to avoid the policy for reasons set up in said pleading then filed. Soon thereafter Hewitt called on the clerk and claimed said $87, and asked the clerk for it, and he paid it to him. There is no pretense, either in the plea in abatement or the evidence, that this was done with either the knowledge or consent of Gibbs, Wilson & Company.

It is held in this State that a clause in a policy of insurance making the loss under it payable to a person therein named gives such person an interest in the policy, and he can not be deprived of that interest without his consent. (Security Co. v. Panhandle Nat. Bank, 93 Texas, 582; Panhandle Nat. Bank v. Security Co., 18 Texas Civ. App., 106; see also Cassville Roller Mill Co. v. Aetna Ins. Co. (Mo.), 79 S. W. Rep., 720; Joyce on Ins., vol. 3, par. 2321.) The act of plaintiff in error in depositing the premium in court, and the act of Hewitt in withdrawing the same from court having been done without the consent of defendants in error, and they not being parties thereto, did not deprive defendants in error of their interest in the policy and the right to prosecute this suit.

Upon the trial plaintiff offered in evidence an instrument entitled "Proof of Loss," which purported to have been prepared by F. W. Hewitt, setting out the extent of his loss, amount of insurance, etc. Thereupon defendant asked the court to instruct the jury that this evidence could only be considered upon the issue as to whether or not Hewitt furnished the proof of loss required by the policy, and that the jury should not consider such evidence for any other purpose, and especially, that the jury should not consider it as evidence of the value of the property destroyed, and that they should not consider said instrument as the act of defendant or its agent. The request was denied and the evidence was admitted without qualification.

The fire which destroyed the insured property occurred November 30, 1901. On December 10, 1901, one Wm. L. Easley, an adjuster for

defendant insurance company, visited Kosse, the place of the fire, for the purpose of adjusting the loss under its policy. He called first at the plaintiffs' bank, and asked its employes to show him the policy issued by defendant to Hewitt, then asked to see the policy register kept by its local agent at Kosse, and was shown and examined both the policy and the register. He then inquired for Hewitt, the assured, and Hewitt was sent for by one of plaintiffs' employes. After this, and on the same day, as Easley was taking the train to leave Kosse, he met Gibbs, defendant's local agent, who had come in on the train Easley was going out on, and told him that he had that day adjusted the Hewitt loss under the policy. Plaintiffs, in their petition, set up the issuance by defendant of its policy, the loss under it, alleged an adjustment of the loss, and that the papers pertaining to and showing the adjustment were in the hands of defendant, notifying it to produce them on the trial, and asking judgment for the amount due as fixed by the adjustment. Defendant's counsel, in conformity with such notice, turned over on the trial to plaintiffs' attorneys the paper styled "proof of loss," with the endorsements thereon. This paper was shown to have been obtained by defendant's counsel from the defendant's State agent. On the back of said paper, and in the handwriting of Wm. L. Easley, and written with the same ink with which he signed his name, were endorsements identifying this policy, giving the name of the assured, amount of the policy, date of the fire, date proofs were received, giving "Amount of loss claimed, $1,655.25," and "Amount allowed, $1,655.25," all of said endorsements signed by Wm. L. Easley, adjuster. At the bottom of said endorsements was written the following: "60 days." The policy provides that the "ascertainment or estimate" of loss or damage to the property insured "shall be made by the insured and this company, . . . and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, satisfactory proof of the loss have been received by this company." Proofs of loss and adjustment were made on December 10, 1901. M. A. Shumard, the general State agent of defendant, testified that the loss was adjusted, and the amount of the liability of the insurance company agreed upon in the adjustment to be $1,655.25, and that under the adjustment and the sixty-day clause in the policy the date of the payment of the loss would be February 10, 1902. On February 10, 1902, the said State agent sent the company's draft to its local agent at Kosse for said sum of $1,655.25 in settlement of this loss. This draft was made payable to Rotan Grocery Company and F. W. Hewitt, and was returned because the bank (Gibbs, Wilson & Co.) owned the proceeds of the policy. The court instructed the jury that there was an adjustment of the loss under the policy, and to find for plaintiffs the amount of the loss as adjusted, $1,655.25, with six percent per annum interest from February 10, 1902, unless they found for defendant under other instructions. In another paragraph they were instructed that, if they found certain facts therein stated to exist, the adjustment was not binding on defendant, "and in such case there would be no evidence of the value of the goods lost that belonged

to Hewitt, and you will in such event find for defendant." The proofs of loss constituted part of the adjustment. The adjustment was evidence of the value of the goods destroyed and prima facie proof of the amount due, and a charge such as asked would have been misleading, and was properly refused. (Fire Association of London v. Blum, 63 Texas, 285; Joyce on Ins., vol. 4, par. 3771.)

The sixth and seventh assignments of error complain of the action of the court in admitting, over defendant's objection, testimony that after the fire Hewitt, the insured, and Gibbs, manager of defendant in error, discussed the loss under the policy, and that Hewitt recognized it as payable to Gibbs, Wilson & Company, and desired them to collect it and apply the proceeds to his indebtedness to them. It is contended that the declarations of an insured, made after a loss, can not be used by a claimant of the policy as original evidence to show title or interest in a third party in a controversy between him and the insurance company. After alleging that Hewitt took out this policy under an agreement to keep his stock insured, with clauses in his policy making the loss, if any, payable to plaintiffs to secure them in his debt to them, plaintiffs alleged that, after the loss under this policy, Hewitt recognized the right of plaintiffs to the proceeds of the loss, and directed plaintiffs' agent to collect the same and apply it as a credit on his indebtedness to plaintiffs. As proving the latter allegations, plaintiffs proved by J. B. Gibbs, the manager of their bank at Kosse, that shortly after the fire Hewitt and he discussed the loss, and in that discussion Hewitt recognized the loss under this policy as payable to Gibbs, Wilson & Company, and directed them to collect it and apply the amount collected on his indebtedness to them. The policy was then with plaintiffs as collateral security for that indebtedness. A fire insurance policy, after loss, may be orally assigned. (13 Am. & Eng. Ency. Law (2d ed.), p. 201, note 6; Greene v. Republic Ins. Co., 84 N. Y., 572.) The evidence complained of was admissible as tending to prove such an assignment of the policy sued on.

On the trial the defendant offered the depositions of F. W. Hewitt, purporting to have been taken before Ponder S. Carter, a notary public of Natchitoches Parish, Louisiana, as admission by him against his interest. These depositions had been suppressed by the court. It was shown that Hewitt was dead. The declarations and admissions were to the effect that about 600 bundles of ties and 300 rolls of bagging, composing part of his stock at the time the policy of insurance was written, belonged to the Rotan Grocery Company, and that he told Mr. Gibbs to write him a policy on the bagging and ties in the name of the Rotan Grocery Company The depositions of Hewitt having been suppressed, the same were not admissible as depositions. (Joy v. Liverpool, London & Globe Ins. Co., 74 S. W. Rep., 822.) The statements of Hewitt were contained in a deposition purporting to have been taken January 16, 1904. This was long after the fire, and after Hewitt had told Gibbs, Wilson & Company to collect the loss and apply it to his debt to them. In a suit involving the title to personal property it was held that the declarations of a prior vendor, made after a sale, are not admissible against his vendee to defeat a recovery by him. (Bergen v.

Marble Co., 72 Texas, 53; Boltz v. Engelke, 63 S. W. Rep., 899, 900.) There is authority to the effect that acts, declarations and statements similar to those made by Hewitt are sufficient to constitute an oral assignment of the policy. (Greene v. Insurance Co., supra.) If this holding is sound, then under the authorities last cited the evidence was not admissible. But however this may be, the answers in the deposition offered were not in the handwriting of Hewitt. There is no evidence that Hewitt made such statements to the writer and that the writer correctly took down his statements, and that it was then signed by Hewitt. We are of the opinion that, before the statements and admissions contained in the paper could be introduced against Hewitt, or his assignees, that it should be shown that Hewitt made the statements therein contained, that they were correctly written down at the time, and that Hewitt signed the same. These facts, if they are facts, could have been shown by the person who wrote down the statements. The certificate of the notary was not evidence of these facts. (6 Ency. Pl. & Prac., 541.) We conclude that there was no error in excluding the evidence.

Again, the suit was to recover upon the adjustment of the loss under the insurance policy, and by the court's charge a recovery was not authorized or permitted except on the adjustment. There is nothing in the excluded statements of Hewitt impeaching the perfect fairness of the adjustment, or that shows, or even tends to show, either fraud or mistake in the adjustment. The action to recover after adjustment is based upon a new and independent contract, and not upon the policy, and the insurer can defeat such action only by showing fraud or mistake in the adjustment Even if it be shown that there had been forfeitures, of which the insurer had no knowledge when the adjustment was made, it will not be excused, if it appears that the information was available and might have been obtained by the use of reasonable diligence. (Ostrander on Fire Ins. (2d ed.), par. 213; Joyce on Ins., vol. 4, par. 3743; May on Ins., vol. 2, par. 442; Smith v. Glen Falls Ins. Co., 62 N. Y., 85; Staache v. St. Paul Fire Ins. Co., 49 Wis., 89, 35 Am. Rep., 773.)

For the reason last set forth, in our holding that there was no error in excluding the admissions made in the purported deposition of Hewitt, we hold that the court did not err in excluding the affidavit of Hewitt, made before M. M. Patton, a notary public of McLennan County, on March 4, 1902; that Gibbs was instructed by him to write a policy covering the ties and bagging; that the same belonged to the Rotan Grocery Company, and the policy was to be taken out to protect their interest in case of fire. Nor did the court err in excluding the statements of Hewitt, made to the witness Shear, to the same effect, made after the loss, and after Hewitt had parted with his interest in the policy.

There was no error in excluding the transfer of the policy to the Rotan Grocery Company by Hewitt on January 26, 1902. He could not, after the loss had occurred, by an assignment of his claim against the company, defeat the rights of Gibbs, Wilson & Company, the payees under the "loss payable" clause in the policy. (Security Co. v. Pan-

handle Nat. Bank, 93 Texas, 582; Bank v. Security Co., supra; Joyce on Ins., vol. 3, par. 2321.)

The following paragraph of the charge is assigned as error: "You are instructed that on October 15, 1901, F. W. Hewitt was insured by defendant in a sum not exceeding $2,000, for the term of one year, upon certain property in Kosse, which plaintiff says was destroyed by fire on or about November 30, 1901; that by the policy the loss, if any, was payable to Gibbs, Wilson & Company, and that there was an adjustment of the loss made by Hewitt and an agent of defendant on December 10, fixing the same at $1,655.25, and you will find for plaintiff the said sum, with interest at the rate of six percent per annum from February 10, 1902, unless you shall find for defendant under some one or other of the issues hereinafter submitted."

It is contended that this charge is upon the weight of evidence, in that it instructed a verdict for $1,655.25, unless the jury found for defendant under one of its special pleas, although the question of ownership of the property, and the amount of the loss, were issues in the case upon which the burden of proof was on plaintiff. One of the issues referred to in the paragraph of the charge complained of was the question of ownership of the property destroyed, which issue the court submitted, and the jury found this issue in favor of plaintiffs. There was evidence tending to show, and which justified the jury in finding, that the bagging and ties in Hewitt's store at the time the policy was issued, and which were covered by the policy, belonged to Hewitt. The adjustment fixed the amount of the loss, and the same was prima facie evidence of the amount. (Fire Association of London v. Blum, 63 Texas, 285.) The face of the policy showed that the loss was payable to Gibbs, Wilson & Company, and the court did not err in assuming this fact as established.

The evidence showed an adjustment of the loss by defendant's adjuster, Wm. L. Easley. The nonwaiver clause in the policy will not be extended beyond its plain terms, and would not apply after an adjustment of the loss had been made. (Pennsylvania Ins. Co. v. Hughes, 108 Fed. Rep., 477; Smith v. Glen Falls Ins. Co., 62 N. Y., 85; Illinois Mut. Fire Ins. Co. v. Archdeacon, 82 Ill., 236.) It could be shown, as a ground for setting aside the adjustment, that it was fraudulent, or made through a mistake of fact.

It is contended that the court erred in the following charge: "If Easley, defendant's adjuster, knew at the time of adjustment that Hewitt had failed to keep such books as were required by the policy, then the defendant can not defeat this suit on the ground of failure to keep such books." This charge is applicable to the iron-safe clause plead by defendant. In order for a breach of this clause to be available as a defense to the adjustment, the proof should show that the adjustment was made in ignorance of the breach. The proof fails to show that the adjuster called upon Hewitt to produce his books and records, and that he failed to produce them for his inspection during the adjustment. That the company had no knowledge of facts which might, if known, have been effectual to defeat the claim, is of no avail, if the

**Vol. XLII. Civil—27.**

insurer might have known them upon inquiry at the time of the adjustment, and was not fraudulently prevented from coming to their knowledge by the insured. (Fire Association of London v. Blum, supra; Ostrander on Fire 'Ins., par. 213; Joyce on Ins., par. 3743; May on Ins., vol. 2, par. 442; Smith v. Glen Falls Ins. Co., 62 N. Y., 85.)

Complaint is made of the action of the court in refusing the following special charge requested by defendant: "You are instructed that the undisputed evidence shows that J. B. Gibbs, the agent of the defendant company, who issued the policy sued upon, acted in that transaction as the agent of plaintiff, and for its benefit and protection, and also as the agent of Hewitt, the insured, and that said Gibbs did not report at the time to defendant that said policy was made payable to plaintiff, and that plaintiff did not discover said fact until after the fire and after the submission of proofs of loss by the insured to defendant's adjuster; that a controversy arose between plaintiff and the Rotan Grocery Company as to the right to the proceeds of the policy, and thereupon defendant denied any liability under the policy. You are therefore instructed that, under the undisputed testimony, defendant promptly denied liability upon the policy upon discovery of the fact that said J. B. Gibbs had acted as its agent, and also as the agent of plaintiff, and of Hewitt, in procuring the policy of insurance, and you will therefore find for the defendant."

It is contended that, under the undisputed evidence, the policy was voidable at the election of the insurance company, because it was issued by Gibbs, as manager of plaintiff's bank, for the benefit and protection of the bank, upon the property of an insolvent or financially crippled debtor, and Gibbs, while pretending to act in the transaction as agent of defendant, concealed these facts from it, although it was his duty under the rules of defendant to report it. The rules of defendant applicable to its agents contained the following instructions: "The property of all people of questionable standing, either personal or in business, is strictly prohibited." "See that all questions on daily report applicable to the risk reported are answered in full; otherwise daily report will be returned for completion or risk declined. Questions are not asked 'as a matter of form,' but to gain information absolutely necessary to a correct understanding of the liability assumed." "On issuing policy, send daily report of it to this office by first mail. Read the instructions on daily report and you will see exactly what is wanted."

The evidence fails to disclose that Hewitt had any knowledge of these instructions. Gibbs had authority to issue, and did issue, the policy. It is not sought to be avoided for want of authority on the part of the agent to issue the policy, but upon the ground that the agent omitted to comply with his instructions from the company to transmit to it copies of the written portions of the policy, in that he did not show in his daily report that the policy contained a stipulation making the loss, if any, payable to plaintiff.

We think it clear that instructions from the plaintiff in error to its agent, not to write insurance on property of "insolvent or financially crippled debtors," will not avoid a policy written on such prohibited

risks unless it be shown that the insured had knowledge of such inhibition. (May on Ins. (4th ed.), vol. 1, par. 126; Joyce on Ins., vol. 1, par. 428; Joyce on Ins., vol. 1, par. 659; 16 Am. & Eng. Ency. Law (2d ed.), 917, and note 2; Howard Ins. Co. v. Owens (Ky.), 21 S. W. Rep., 1037.)

J. B. Gibbs, at the time of writing the policy, was not the agent of Hewitt, the insured. Hewitt applied to him for the insurance, and desired $3,000, but Gibbs, the local agent, after inspecting the risk, declined to write it for more than $2,000, because he did not think the stock would bear more. At that time Gibbs had no interest in the partnership of Gibbs, Wilson & Company, to whom the loss under the policy was payable. He was at that time an employe of that partnership. Hewitt did not owe him anything, and he had no interest in Hewitt's business. The "loss payable clause" in the policy was inserted under an agreement made about April 28, 1900, between Hewitt, acting for himself, and J. B. Gibbs, acting for Gibbs, Wilson & Company. The insertion of this clause in the policy did not make Gibbs, Wilson & Company a party to the contract, but the contract remained a contract between the insurance company and Hewitt. (Hamburg-Bremen Fire Ins. Co. v. Ruddell, 82 S. W. Rep., 826.) Gibbs, Wilson & Company not being parties to the contract, and J. B. Gibbs, at the time the policy was written, not being the agent of Hewitt, or having any interest in his business, could, in issuing the policy, only have acted for the insurance company, and, this being so, his act was valid. (Fiske v. Royal Exchange Assur. Co., 75 S. W. Rep., 382; British-American Ins. Co. v. Cooper, 6 Col. App., 25, 40 Pac. Rep., 147.)

Again, the charge requested tells the jury that, under the undisputed testimony, defendant promptly denied liability upon the policy upon the discovery of the fact that J. B. Gibbs acted as its agent, and also as agent of plaintiff, and of Hewitt, in the procuring of the policy of insurance. This fact was not established by the evidence. It would seem that the defendant had notice of all the facts it now claims avoided the policy when its adjuster saw the policy at the time he adjusted the loss on December 10, 1901; when Gibbs wrote them on January 4, 1902, that the policy had been assigned to the bank; when he wrote them again, on February 12, 1902, returning draft, that the bank held the policy under a clause in it making the loss payable to Gibbs, Wilson & Company; when Gibbs's depositions were taken on April 4, 1902, in which he testified fully to all these facts; when Shumard's depositions were taken on May 11, 1902, in which he swears to all the facts they now set up; when Rotan's petition was filed, March 18, 1902, and plaintiffs' cross-bill, setting up the facts fully, attaching a copy of the policy, was filed on June 30, 1902; yet, notwithstanding all these facts, defendant retained the premium paid it, and never repudiated the dual agency of Gibbs, if any, until December 24, 1903, although it had filed two answers before. To have told a jury that such was a prompt repudiation of the acts of its agent would have been error. It was the duty of the company to manifest its intention to avoid the policy promptly upon ascertaining its agent was, at the time he wrote the policy, also the agent of the insured. (Hanover Fire Ins.

Co. v. Shrader, 11 Texas Civ. App., 259, 260; Georgia Home Ins. Co. v. Smithville, 49 S. W. Rep., 412; Morrison v. Insurance Co. of North America, 69 Texas, 363.)

The assignments of error not discussed have been carefully considered by us, and we are of the opinion no reversible error is pointed out therein. The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

Our attention is called, in the motion for rehearing, to a statement in the opinion which is misleading. In speaking of the declarations in the deposition of Hewitt purporting to have been taken before Ponder S. Carter, notary public of Natchitoches Parish, Louisiana, we say: "The declarations and admissions were to the effect that about 600 bundles of ties and 300 rolls of bagging, composing part of the stock at the time the insurance policy was written, belonged to the Rotan Grocery Company." The exact declaration shown by the bill of exception was: "I had in stock at the time of the fire several cars of grain and hulls, and also about 600 bundles of ties and 300 rolls of bagging which belonged to the Rotan Grocery Company." This declaration is substituted for the statement in the opinion, and in this respect the opinion is corrected. This correction does not affect the conclusion reached, and the motion for rehearing is overruled.

*Overruled.*

Writ of error refused.