HENNINGSEN et al. v. UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE, MD. (BROWN et al., Interveners.)

(Circuit Court of Appeals, Ninth Circuit. February 12, 1906.)

No. 1,212.

1. UNITED STATES—CLAIMS—ASSIGNMENT.

Rev. St. § 3477 [U. S. Comp. St. 1901, p. 2320], provides that all transfers and assignments of any claim against the United States or any part or share thereof shall be void unless made in the presence of two attesting witnesses after the allowance of such claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof, and section 3737 [U. S. Comp. St. 1901, p. 2507] declares that no contract or order or any interest therein shall be transferred by the party to whom such contract or order is made to any other party, and any such transfer shall cause the annulment of the contract or order transferred so far as the United States is concerned. *Held*, that an assignment by a public contractor of a claim against the United States for money accruing on a building contract was void, both as against the United States, the contractor's surety, and the laborers, and materialmen.

[Ed. Note.—Assignment of claims against United States and government contracts, see note to Greenville Sav. Bank v. Lawrence, 22 C. C. A. 650.]

2. SUBROGATION—PRIORITY OF CLAIMS—PUBLIC CONTRACTORS—SURETIES.

Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523] requires public contractors with the United States to furnish a bond that the contractor shall promptly pay all persons supplying labor and materials in the prosecution of work, and that any person making affidavit to the furnishing of labor and materials for the contractor shall be furnished with a certified copy of the contract and bond, on which such person shall have a right of action in the name of the United States against the contractor and sureties. *Held*, that where a federal contractor's surety was compelled to pay labor and material claims to an amount exceeding the amount due from the government to the contractor it was entitled to subrogation to the rights of the laborers and materialmen so paid against such sum which claim was prior to that of a mere volunteer lender of funds to the contractor, not shown to have been used in the performance of the contract.

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Washington.

The record shows that on the 15th of May, 1903, the appellants R. M. Henningsen and Edward W. Clive, then being copartners, entered into a contract in writing with G. S. Bingham, major and quartermaster, United States army, representing the government of the United States, for the construction of certain buildings at Fort Lawton, in the state of Washington, for the faithful performance of which contract on the part of Henningsen and Clive they, as principals, and the United States Fidelity & Guaranty Company of Baltimore, Md., as surety, executed a bond to the United States conditioned that Henningsen and Clive would in all respects duly and fully perform all of their agreements and obligations specified in the contract, and would promptly make full payment to all persons supplying labor or materials in the prosecution of the work therein provided for; which bond was accepted by the government, upon which acceptance the contract was awarded to Henningsen and Clive, and its performance entered upon by them. Subsequently, and before the making by Henningsen of the assignment to the defendant Spencer, afterwards mentioned, Clive withdrew from participation in the performance of the contract under an agreement between himself and Henningsen. The contract, in so far as concerned the completion of the buildings, was fully performed, but the contractors failed to pay in full all persons supplying labor and materials in the prosecution of the work, and failed and refused to pay just and lawful claims for such labor and materials amounting, in the aggregate, to $15,409.04, and in that respect, and to that extent made default in the terms, conditions, and obligations of the bond. After the contractors had so defaulted, the surety commenced suit in the court below against Henningsen, Clive, and each of the persons to whom they were indebted for such labor and materials, stating in its bill its liability upon the bond to such creditors to the full extent of the penalty of the bond, to wit, the sum of $11,625, which suit resulted in a decree adjudging the surety company indebted to such creditors of Henningsen and Clive in the full sum of $11,625, and directing payment thereof to the creditors pro rata, and decreeing that upon making such payment the liability of the surety on the bond be discharged.

Subsequent to the execution of the bond and contract, and after Clive, under his agreement with Henningsen, had ceased his connection with the performance of the contract, and after the latter had been in large part executed. Henningsen executed to the defendant Spencer, in trust for the defendant National Bank of Commerce, of Seattle, an assignment of the balance of the money coming to him under the contract, and directing the quartermaster to pay over to Spencer all such moneys. The purpose of the assignment was to secure the repayment of a loan made by the bank to Henningsen on or about October 10, 1903, of $3,500, and subsequent loans of $1,000 and $370. All of the money so loaned by the bank to Henningsen was paid by it directly to him, who disbursed it without any supervision or control upon the part of the bank or of Spencer.

At the time of the commencement of the present suit by the surety, there was in the hands of the quartermaster, representing the United States, the sum of $13,066, earned by Henningsen under the contract, which sum of money the quartermaster was about to pay over to Spencer in pursuance of the aforesaid assignment and order. The object of this suit was, in part, to prevent such payment, and to obtain a decree that such assignment and order were invalid. Upon the filing of the original bill in the court below, Henningsen, the bank, and Spencer were temporarily enjoined from receiving the money from the quartermaster, after which a written stipulation was entered into between the complainant surety, Henningsen, Spencer, and the bank, pursuant to the terms of which $8,024.21 of the $13,066 were paid to creditors of Henningsen, who had performed labor and furnished materials in the performance of the contract, and the balance, to wit, $5,041.79, was applied in conditional payment and satisfaction of the indebtedness of Henningsen to the bank, which amounted to $5,041.79; the stipulation further providing that, in the event it should be finally determined by appropriate litigation that the complainant surety was entitled to receive the last-mentioned amount, the bank would pay the same to it. The liability and loss of the surety, as finally established and decreed by the court below, in the suit hereinbefore referred to, having exceeded the said sum of $5,041.79, the court below held that the surety company was equitably entitled to receive the said sum of $5,041.79, and accordingly gave judgment against the bank for that sum, with costs. It does not appear that at the time that judgment was entered the surety had, in fact, paid to the laborers and materialmen the full penalty of its bond, as asked for and decreed in the suit brought by it against them and others; but it appears from the certificate of the clerk of the court below, filed in this court, that the complainant has since done so; so that the judgment of the court below is the judgment to which the appellee is entitled, if its equity to the balance of the fund is superior to that of the bank.

George E. de Dteiguer, for appellants.
Graves, Palmer, Brown & Murphy, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The real question in the case is one of priority of equities as between the bank and the surety company. In the first place, it is to be noted that it does not appear that the money loaned to Henningsen by the bank was loaned upon the agreement on his part to use it in the performance of the contract in question, nor does it appear that as a matter of fact it was so used.

Spencer, the trustee, and cashier of the bank, being asked whether Henningsen made any statement as to the purpose for which he wished to borrow the money, answered:

"A. Yes; he stated at the time that he was being hampered on his Ft. Lawton contract by the fact that the inspector was giving him short estimates, and that he would have to have money to carry the contract through; he also stated that there were some little items of debt on the Mary Island contract, the owners of which were bothering him and that he wished to get this money for the purpose of meeting his pay rolls and making payment on material on the Ft. Lawton contract and to liquidate the items mentioned above in the Mary Island contract. Q. Did he make any explanation to you as to whether the items of debt on the Mary Island contract had anything to do with the prosecution of his work on the Ft. Lawton contract? A. He said that they were threatening to sue him, and that he was afraid

it would absolutely prevent him from going ahead with his work, fearing others to whom he was owing money on the Ft. Lawton contract would do the same thing.    Q. Did he make any statement as to the respective amounts which he expected to use on the different contracts?    A. He did not."

Spencer was further questioned, and testified as follows:

"Q. At the time you made Mr. Henningsen the first advance, being that for $3,500, was there any arrangement between you and him as to the securing of payment of that note?    A. There was.    Q. What was that agreement?    A. He agreed he would assign and turn over to us the payments received on this contract."

The assignment by Henningsen to Spencer and the acceptance of the order by the quartermaster of the fund which he expected to disburse for the government, was void as against the United States, the surety, the laborers, and the materialmen.    Rev. St. U. S. §§ 3477, 3737 [U. S. Comp. St. 1901, pp. 2320, 2507]; Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; McKnight v. United States, 98 U. S. 179, 25 L. Ed. 115; Spofford v. Kirk, 97 U. S. 484, 24 L. Ed. 1032; United States v. Gillis, 95 U. S. 407, 24 L. Ed. 503; Greenville Savings Bank v. Lawrence, 76 Fed. 545, 22 C. C. A. 646.

Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen.    Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money.    Prairie State Bank v. United States, supra; Insurance Company v. Middleport, 124 U. S. 534, 8. Sup. Ct. 625, 31 L. Ed. 537; Sheldon on Subrogation, § 240. Certainly the bank cannot be justly said to have any sort of equity to the entire sum of $5,041.79, for it is not pretended that in making its loans to Henningsen it was understood that he was to use all of the money so loaned in the performance of the contract in question.    It is equally difficult to see how an equity in its behalf can attach to any specific part of the fund in controversy, for the reason that the facts of the case leave it altogether indefinite and uncertain as to how much of the money loaned by the bank to Henningsen it was understood he was to use in the performance of this particular contract.    When we come to look at the equities on the part of the surety company, we find that it paid what it was compelled to pay the full penal sum of its bond, to the laborers and materialmen by reason of its principal's failure to pay them, exceeding in the aggregate the amount of the fund in controversy.    That bond was given under and in pursuance of the provisions of the act of Congress approved August 13, 1894, entitled "An act for the protection of persons furnishing materials and labor for the construction of public works" (28 Stat. 278, c. 280 [U. S. Comp. St. 1901, p. 2523]) one of the purposes of which act was, as held by the Circuit Court of Appeals for the Eighth Circuit, in United States v. National Surety Company, 92 Fed. 549, 34 C. C. A. 526, and by this court in United States v. Rundle, 100 Fed. 400, 40 C. C. A. 450: "to afford full protection to all persons who supplied materials or labor in the construction of public buildings or other public works, iasmuch as

such persons could claim no lien thereon, whatever the local law might be for the labor and materials so supplied. There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government." The bond required by that act, and in pursuance of which the bond under consideration was given, was, as said in the cases cited: "intended to perform a double function, in the first place, to secure to the government, as before, the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained materials or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains— the one for the benefit of the government, and the one for the benefit of third persons—are as distinct as if they were contained in separate instruments; the government's name being used as obligee in the latter agreement merely as a matter of convenience."

Where, as in the Prairie State Bank and the Rundle Cases, supra, the surety is compelled to make good the default of his principal as respects the government, the surety is, as was distinctly held in those cases, entitled to be subrogated to the rights of the government. Upon precisely the same principle the surety is entitled to be subrogated to the rights of the laborers and materialmen, where, as in the present case, it is compelled by reason of the obligations of the bond to pay them for labor and material because of the default of its principal. That right of subrogation relates back, as was held by the Supreme Court in Prairie State Bank v. United States, supra, to the time the contract of suretyship was entered into. See, also, First National Bank of Seattle v. City Trust Safe Deposit Surety Co., et. al., 114 Fed. 529, 52 C. C. A. 313; Richards Brick Co. v. Rothwell, 18 App. D. C. 516.

The judgment is affirmed.