FIRST NAT. BANK OF PARIS v. O'NEIL ENGINEERING CO. et al. (No. 1396.)

(Court of Civil Appeals of Texas. Texarkana. April 10, 1915. Rehearing Denied May 6, 1915.)

1. ASSIGNMENTS ⊂⇒85 — PRIORITIES — PAROL AND WRITTEN ASSIGNMENTS.

In determining the rights of two assignees to the fund, the fact that one assignment is in parol and the other in writing does not give the latter any superior dignity.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 149–151; Dec. Dig. ⊂⇒85.]

2. ASSIGNMENTS ⊂⇒74 — EFFECT — TITLE TO FUND.

A parol assignment by a company constructing a public road, to a bank, of funds to become due the construction company under the contract, for the purpose of securing advances by the bank, vests in the bank the equitable title to the fund on which the warrants in favor of the construction company would be drawn and a right to the possession of the warrant as soon as it was drawn, unless there existed a superior right on the part of some other claimant.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 138; Dec. Dig. ⊂⇒74.]

3. SUBROGATION ⊂⇒27—AGREEMENT FOR SUBROGATION.

A clause in an application by a contractor for a surety bond providing that the surety should be subrogated to the contractor's rights under the contract, and assigning to the company all deferred payments and retained percentages and all moneys due and payable on the contract at the time of any default, gives the surety only the same rights to which it is entitled under the law of subrogation.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 68, 78; Dec. Dig. ⊂⇒27.]

4. ASSIGNMENTS ⊂⇒73 — CONSTRUCTION — CLAIMS ASSIGNED.

An assignment by a contractor whose contract provided that 15 per cent. of the value of the work finished should be retained from the payments to be made as the work progressed to his surety to secure advancements made by the surety of all moneys rising from the retained percentages under the contract gives the surety no claim to money due the contractor for work completed and payable at once.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 139–142; Dec. Dig. ⊂⇒73.]

5. ASSIGNMENTS ⊂⇒85 — OPERATION — PRIORITY.

A written assignment by a contractor to his surety for sums due him under the contract is subrogated to a prior parol assignment by him of the same funds.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 149–151; Dec. Dig. ⊂⇒85.]

6. SUBROGATION ⊂⇒36 — RIGHTS — PRIORITY OVER ASSIGNMENT.

A surety claiming by subrogation a fund as the property of a defaulting principal has a superior equity over a creditor claiming by equitable assignment.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 99–103; Dec. Dig. ⊂⇒36.]

7. SUBROGATION ⊂⇒36 — RIGHTS OF SUBSTITUTED PARTY—EXTENT.

Where the surety of a road contractor who was compelled to complete the contract seeks subrogation to the rights of the contractor against the fund, the surety cannot claim the fund as against an assignee of the contractor, unless the board authorized to make payments thereof could have lawfully refused to pay the amount to the contractor or the assignee, since "subrogation" is merely the substitution of one party for another with respect to certain property rights, but the rights of the substituted party are coextensive with and limited by the rights of the other.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 99–103; Dec. Dig. ⊂⇒36.]

For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

8. HIGHWAYS ⊂⇒113 — CONSTRUCTION CONTRACTS—ASSIGNMENTS—SURETY.

Where a road contractor asked and was given permission by the board to have the work completed by his surety, there was no default by him in the performance of the contract, since it was merely an assignment of the contract with the consent of the other party, and the fact that the assignee was the assignor's surety who took the contract to minimize its loss does not affect the rights of the parties, so that at the time the board could not withhold payment due the contractor from his assignee, and the surety did not become entitled thereto by subrogation.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ⊂⇒113.]

9. HIGHWAYS ⊂⇒113 — CONSTRUCTION CONTRACTS—BREACH—WAIVER.

Even if the contractor had defaulted with his contract before the surety was substituted, the consent of the board to the completion of the contract by the surety waived any claim for damages for default, and it could not withhold the warrant due for work already completed.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ⊂⇒113.]

10. HIGHWAYS ⊂⇒96—OFFICERS—INDIVIDUAL LIABILITY—UNAUTHORIZED ACT.

Under Sp. Acts 31st Leg. c. 72, providing for the construction of permanent roads, and authorizing the road board to make the necessary contracts, allow claims, and direct their payments, and requiring the county clerk to issue and deliver warrants, the board could not withhold a warrant from a person entitled thereto, and if the members attempt to do so they are individually liable for damages resulting therefrom.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 313, 314, 316, 317, 319–322, 356; Dec. Dig. ⊂⇒96.]

Appeal from District Court, Lamar County; Ben H. Denton, Judge.

Action by the First National Bank of Paris against the O'Neil Engineering Company and others. From a judgment against two of the defendants personally, but denying the plaintiff's claim to the fund in controversy, and awarding it to two other defendants, the plaintiff appeals. Modified and affirmed.

A. P. Park, of Paris, for appellant. Burdett & Connor, of Paris, and J. J. Collins, of Dallas, for appellees.

HODGES, J. The appellant, as plaintiff in the court below, brought this suit against the

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

O'Neil Engineering Company, a corporation, M. Griffin O'Neil, Lamar county, the board of permanent road commissioners of justice precinct No. 1 of Lamar county, Tex., and Rube S. Wells, S. L. Bedford, T. J. Bridges, T. J. Record, S. B. M. Long, U. Edzards, and Buster Stephenson. The seven individuals last above mentioned are alleged to be the members of what is known as the "board of permanent commissioners" of precinct No. 1 of Lamar county, as constituted under the provision of a special act of the Legislature enacted in 1909. Enough of the act referred to is pleaded to show the authority of this board to expend a fund accumulated by the sale of bonds in the construction of good roads in that precinct, and authority on the part of the board to make contracts for the purpose of having such roads constructed.

For cause of action it is alleged that on the 26th day of June, 1912, the O'Neil Engineering Company, one of the above-mentioned defendants, entered into a contract with the board of permanent road commissioners of precinct No. 1 whereby the former undertook to construct a number of roads in precinct No. 1 of Lamar county according to certain specifications and details shown in the contract and the maps and profiles annexed thereto, the consideration being the sum of $200,000; that after the making of that contract the O'Neil Engineering Company, being in need of funds for the purpose of prosecuting the enterprise, applied to the appellant, the First National Bank of Paris, for a loan of money to be used by it for the purchase of material and the payment for labor in the prosecution of that work, and, in order to induce the bank to make such loan, verbally assigned to it all funds which were thereafter to become due under its contract with the board, to secure advances as the bank might make to enable the engineering company to carry out its contract. It was also agreed that all estimates and warrants for money issued by the board for work done in favor of the engineering company should be delivered to the bank, and by it collected. It is alleged that on the 24th day of August, 1912, and at other dates during the months of September and October following, the bank made advances to the engineering company for the purposes above mentioned, amounting in the aggregate to $9,500, and, as evidencing such advances, the O'Neil Company, together with O'Neil in person, executed three different notes, payable on demand, for the amounts so advanced. It is further alleged that all the money so advanced was used in the construction of the roads; that on August 4, 1913, there was due to the engineering company from the board the sum of $13,347.97, on an estimate that day allowed, and for which a warrant had been ordered drawn for that sum upon the funds under the control of the board; that all similar warrants theretofore issued were turned over to the

bank as per agreement, but the warrant for this last-mentioned sum was not delivered to O'Neil, who was president of the engineering company, because of his absence, and for that reason was not turned over on that day to the bank; that because of a claim set up by the sureties on the bond of the engineering company to the warrant it was never delivered to the bank. It is also alleged that the appellant notified· the board in open session of its claim to the fund above referred to and demanded payment; that the board refused to turn over the warrant to the appellant bank, but delivered it to the surety company upon its giving an indemnity bond.

Lamar county, one of the defendants named above, demurred·to the plaintiff's petition, and also filed pleas in abatement and in answer to the merits. The board pleaded in abatement, and also answered by making the Fidelity & Deposit Company of Maryland and the Title Guaranty & Surety Company parties, asking judgment over against them in the event plaintiff recovered against the board. The Fidelity & Deposit Company of Maryland and the Title Guaranty & Surety Company, in response to the answer of the board, and by way of intervention, filed demurrers and answers asserting rights to the fund by reason of certain assignments set out in their pleadings and by reason of certain provisions contained in the application made by the engineering company for bonds, and also claiming the right to the fund in controversy by reason of subrogation.

The cause was tried before the court without a jury, and a judgment rendered in favor of the appellant bank against the O'Neil Engineering Company and. M. Griffin O'Neil for the amount claimed by the bank, but against the bank upon its claim to the fund in controversy, and affirmatively holding that the Fidelity & Deposit Company and the Title Guaranty & Surety Company were entitled to that fund, and judgment entered accordingly. The First National Bank alone has appealed, and presents practically but one assignment of error, and that is that the court erred in not adjudging that it was entitled to so much of the fund in controversy as was sufficient to pay the indebtedness held by it against the engineering·company.

The court filed findings of fact and conclusions of law. These are quite lengthy, and only the substance of what is regarded as material will be here reproduced. The court finds that the special act referred to in the pleadings was enacted in 1909, providing for a special election by which the resident property taxpayers, qualified voters of Lamar county or any political subdivision thereof, might, at an election held for that purpose, vote for the issuance of bonds to an amount not exceeding one-fourth of the assessed value of the real property of such county or political subdivision, and also pro-

viding for the levy and collection of taxes sufficient to pay the interest and to create a sinking fund for the amount of such bonds; that such bonds were to be voted for the purpose of constructing and maintaining macadamized, graveled, or paved roads and turnpikes. See Special Laws of 1909, p. 457. Such portions of this law as may be necessary to be considered, and which are incorporated in the findings of the court, will be hereafter more specifically referred to. On April 22, 1912, an election was held in justice precinct No. 1 of Lamar county, as provided for by the special law, resulting in favor of the issuance of bonds to the amount of $300,000 for road purposes, and the election of T. J. Record, S. B. M. Long, U. Edzards, and Buster Stephenson, who, together with Rube S. Wells, as county judge, S. L. Bedford, county auditor, and T. J. Bridges, commissioner for precinct No. 1, were to constitute a board of permanent road commissioners for precinct No. 1. Thereafter the bonds to the amount of $——— were issued and sold at par, and the sum realized from such sale was deposited, as required by the special law, with the county treasurer, and by him kept as a special fund to be paid out only on the order of the board in the construction of the roads contemplated. For brevity the board of permanent road commissioners will be hereafter referred to as "the board." On June 26, 1912, the board, acting under the authority conferred by the special law, entered into a contract with the O'Neil Engineering Company, a private corporation, by which the latter agreed, in consideration of $200,000, to furnish the labor and material and construct a system of good roads according to the terms of certain written specifications then agreed upon. These roads were to consist of eight different routes leading out of the city of Paris, aggregating about 40 miles in length. On the same date the O'Neil Engineering Company, which will be hereafter referred to simply as the engineering company, executed two bonds for $100,000 each, conditioned, as required by the special law and by the terms of its contract with the board, for the faithful performance of the obligations which it assumed in the construction of the roads. One of these bonds was signed by the Fidelity & Deposit Company of Maryland, and the other by the Title Guaranty & Surety Company. The contract entered into between the board and the engineering company provided, among other things, that at certain stated intervals during the progress of the work the engineering company was to be paid 85 per cent. of the value of the work done and material furnished, upon estimates made by the supervising engineer. The remaining 15 per cent. was to be retained till the contract for the construction of the roads had been fully completed to the satisfaction of the board. After the execution of the contract and bonds above referred to the engi-

neering company, on their application for same, obtained from the appellant, the First National Bank of Paris, certain loans of money aggregating $9,500, to be used in the prosecution of the work undertaken by the engineering company. The court finds that the money so obtained was, in fact, used for that purpose. These loans were evidenced by three different notes executed by the engineering company and M. Griffin O'Neil to the appellant, and were payable on demand. They bore dates as follows: 24th day of August, 1912; 18th day of September, 1912; 10th day of October, 1912. At the times these loans were made, and in order to secure their payment, the engineering company verbally assigned to the appellant all sums which were thereafter to become due and payable to it under its contract with the board, and it was then and there agreed that all warrants issued by the board should be deposited with the appellant and by it collected. Under this arrangement the appellant received and collected all of the warrants issued to the engineering company prior to August 4, 1913; the sums so collected aggregating about $50,-000. These collections, however, were not applied to the payment of the principal of the notes referred to, but were placed to the credit of the engineering company on the books of the appellant bank, and only such portions as were necessary to pay the accrued interest were applied as credits upon the notes. The remainder was checked by the engineering company in the course of its business. On August 4, 1913, there remained to the credit of the engineering company in the appellant bank the sum of $648, and this was applied upon the principal of one of the notes. With that exception the advances made by the appellant to the engineering company are still unpaid. On the same date there was due and payable to the engineering company, upon its contract with the board, the sum of $13,347.97, exclusive of the 15 per cent. retained under the terms of the contract. On that date the board in regular session allowed the claim in favor of the engineering company for that sum, and ordered a warrant drawn for its payment. M. Griffin O'Neil, the president and active manager of the engineering company, was not present at the time this order was made, but was in the city of Dallas. He telephoned upon that date to the cashier of the appellant bank, stating that he desired that the warrant for the $13,347.97 should be turned over to the appellant according to the agreement theretofore made, and for the purpose of liquidating the indebtedness due the appellant from the engineering company. But the warrant was held by the secretary of the board, and was not delivered to the appellant or to any one else until August 8th following. On the latter date the board held another meeting, which was attended by M. Griffin O'Neil and the representatives of both the appellant and the surety companies. The

appellant through its representatives gave notice to the board of its claim to the warrant by the assignment previously made by the O'Neil Engineering Company, and formally demanded its delivery. At the same meeting and on the same date M. Griffin O'Neil appeared before the board and stated that by reason of financial and other difficulties he was unable to carry out his contract with the board for the completion of the roads, and requested that his surety, the Fidelity & Deposit Company of Maryland be permitted to take over and complete his contract. This request was subsequently agreed to, and the Fidelity & Deposit Company thereafter undertook the completion of the contract according to the terms originally agreed upon. The representative of the Fidelity & Deposit Company, on the date above mentioned, also gave notice to the board of its contract with the engineering company by which it undertook to complete the construction of the roads, and also of an assignment from the engineering company of all sums then due that company upon estimates theretofore made, including the sum represented by the last estimate, amounting to $13,347.97. The language of this assignment relied on, or so much of it as may be material, will be hereafter quoted. Previous to August 8th the Fidelity & Deposit Company, which will hereafter be referred to as the surety company, had advanced to the engineering company the sum of $11,000 to enable the latter to prosecute its work and carry out its contract with the board. In order to secure the repayment of the advances thus made the engineering company, on February 25, 1913, executed an instrument by which it conveyed to the surety company all money to become due to the engineering company under its contract arising from the retained percentages then held or thereafter to be held by the board under the terms of its contract. At the time the appellant and the surety company demanded the delivery of the warrant in controversy, on the 8th day of August, both demands were refused; but on August 11th thereafter the board directed the delivery of the warrant to the surety company, upon the latter's executing a bond to indemnify the members of the board against any liability they might incur by reason of such delivery.

The court further finds that at the time of the trial the roads which formed the subject-matter of the contract between the board and the engineering company had not all been completed, but that the surety company, which was then carrying on the work of construction, had lost money by its undertaking, and would ultimately lose more money in constructing the roads than the warrant in controversy amounted to.

He also finds that the bank had no notice of any written assignment made by the engineering company in favor of the surety company, and that the surety company had no notice of the verbal assignments relied upon by the appellant.

From these facts the court concluded, as a matter of law, that the surety company had a superior right to the fund in controversy, and that the board committed no error in its disposition of the warrant. From a judgment rendered in accordance with that conclusion, the bank prosecutes this appeal.

The only errors assigned are those which question the court's legal conclusions from the foregoing facts. To summarize: These facts show conflicting claims to a special fund authorized by law to be disbursed under the order of the board of permanent road commissioners for justice precinct No. 1 of Lamar county. The appellant claims that fund—or rather so much of it as may be necessary to satisfy its debt against the engineering company—by virtue of parol assignments made before any of the money due upon the contract with the board had been earned by the engineering company. The surety company claims this fund upon three different written assignments. The first is referred to as the application agreement made at the time the contract of suretyship was entered into and as a part of the consideration of that contract; the second is another written assignment, dated February 26, 1913; and the third still another agreement, made on the 8th day of August, 1913, at the time it took over, or agreed to take over, the contract of the engineering company with the board. The surety company also insists upon its right of subrogation to all of the claims, securities, and demands owned or held by the board against the engineering company at the time the latter defaulted in the performance of its contract.

[1] The question then is: Which of these opposing claims should be given the preference? The fact that the appellant's claim depends upon a parol agreement or contract does not affect its validity. There is no law requiring such transactions to be in writing. It must also be conceded that a party owning an interest in a specific fund, due or to become due, has a right to assign certain portions or all of it at his option. We must therefore treat the parol assignment relied upon by the appellant as of equal dignity with written assignments executed under the same conditions and containing the same stipulations.

[2] It can hardly be denied that, as between the engineering company and the appellant, their agreement as to the assignment of the payments to be made by the board as the work progressed had the legal effect of investing the appellant with an equitable title to the fund upon which the warrants in favor of the engineering company were to be drawn. This being the legal status of these two parties with reference to the funds to be disbursed, the appellant had the right to the possession of the warrant in controversy at the time it was issued, and an absolute

title to so much of the funds represented by that warrant as was necessary to satisfy its claim against the engineering company, unless there existed a superior right to those funds on the part of the surety company. The claim of the surety company to such superior right is based upon two grounds—priority of assignment, and equitable subrogation. We shall consider first the written assignments relied upon as the basis of that claim, and, in order to avoid unnecessary prolixity, shall quote and discuss only those portions of the writings which bear directly upon the question in issue. There is in the facts found by the court what is referred to as the "application agreement," which was executed by the engineering company for the purpose of obtaining the signature of the surety company as a surety on its bond securing the board at the time the original contract was entered into. That agreement contains, among other things, the following provision:

"In further consideration of the execution of the said bond, we do hereby agree as of this date that the Fidelity & Deposit Company of Maryland shall, as surety on said bond, be subrogated to all our rights, privileges, and properties as principal and otherwise in said contract, and we do hereby assign, transfer, and convey to said company all the deferred payments and retained percentages and any and all moneys and properties that may be due and payable to us at the time of such breach or default, or that may thereafter become due and payable to us on account of said contract or on account of extra work or material supplied in the connection therewith," etc.

On February 17, 1913, the engineering company, for the purpose of securing from the surety company a loan of several thousand dollars to be used in furtherance of its work of road construction, executed a written instrument, which contains, among other things, the following:

"In consideration of the sum of one dollar paid by the O'Neil Engineering Company, a corporation of the county of Dallas, state of Texas, to the Fidelity & Deposit Company of Maryland, a corporation of Baltimore, Md., and for the purpose of securing the repayment to the said Fidelity & Deposit Company of Maryland of all money heretofore advanced by it to the said O'Neil Engineering Company for the purpose of enabling it to carry out the terms of that certain contract between the last-named corporation and the board of permanent road commissioners for justice precinct No. 1 of Lamar county, Tex., bearing date the 26th day of June, 1912, which money so to be advanced (and which the Fidelity & Deposit Company of Maryland hereby agrees to advance in installments) is estimated at the sum of fifteen thousand dollars, but may be more or less, the O'Neil Engineering Company hereby transfers, assigns, and sets over to the said Fidelity & Deposit Company of Maryland all money to become due to the said O'Neil Engineering Company under said contract arising from the retained percentages now held or hereafter to be held by the said board of permanent road commissioners for justice precinct No. 1 of Lamar county, Tex., under the terms of said contract until the completion thereof; and the said board of permanent road commissioners is hereby authorized and directed to make payment to the said Fidelity & Deposit Company of Maryland upon demands made by it and whenever said retained percentages shall become due to said O'Neil Engineering Company under said contract," etc.

On the 8th day of August, 1913, four days after the allowance of the estimate upon which the warrant in controversy was issued, the engineering company executed still another instrument in writing, which, after a preamble reciting the inability of the engineering company to carry out the terms of its contract with the board and a desire to have the surety company take over the contract and perform same, contains the following provision:

"Now, therefore, know all men by these presents that the undersigned, O'Neil Engineering Company, for and in consideration of the premises, hereby assigns, sets over, and transfers to the Fidelity & Deposit Company of Maryland said contract, with all duties and obligations therein yet to be performed, with said board of permanent road commissioners, and with all rights, equities, and moneys on this day due or hereafter to become due to said O'Neil Engineering Company or said Fidelity & Deposit Company of Maryland by reason of its taking over said contract and completing the same and by virtue of its terms."

[3] The next question that arises is: What legal effect should be given to these instruments, taken either collectively or separately? What rights, if any, did they confer upon the surety company to the fund in dispute? The application agreement, which is the first in the order of execution, merely undertakes to transfer by contract the same rights to which the law would subrogate the surety company in the event it should be compelled to make good the contract of its principal. Inasmuch as we shall later discuss the claim of the surety company to this fund by right of subrogation, it is unnecessary to say more at present concerning the legal effect of this instrument as an assignment.

[4, 5] By its terms the assignment bearing date February 17, 1913, the second of those above referred to, is limited to the retained percentages which the board was authorized by contract to hold. Those percentages are not involved in this litigation, and that instrument, therefore, has no application. The instrument of August 8th, last of those relied on, not only undertakes to convey absolutely to the surety company all rights which the engineering company had under its contract with the board, including the retained percentages and all payments thereafter to become due, but all moneys on that day due to the engineering company. Giving to this instrument all that is claimed for it as a contractual assignment, and conceding that it is sufficiently comprehensive to include the fund in controversy, still it must be held subordinate to the prior assignment made to the appellant. Such assignments take effect in the order in which they are made. Henke & Pillot v. Keller, 50 Tex. Civ. App. 533; 110 S. W. 783; Brander v. Young, 12 Tex. 332; Clark v. Gillespie, 70 Tex. 513, 8 S. W.

121; Harris v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Davis & Goggin v. State Nat. Bank (Civ. App.) 156 S. W. 321; Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; German Fire Ins. Co. v. Gibbs, 42 Tex. Civ. App. 407, 92 S. W. 1068, 96 S. W. 760; 4 Cyc. pp. 77, 78.

[6] The surety company then must rely for priority of right, not upon an assignment from the engineering company, but upon its equitable right of subrogation to whatever then remained in the hands of the board. We think it must be conceded that, as between a surety claiming by subrogation a fund as the property of a defaulting principal and a creditor claiming the same fund by equitable assignment, the former has the superior equity, and should prevail if the facts are sufficient to support the claim to the right of subrogation. Prairie Nat. Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; Henningsen v. Fidelity & G. Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547. See same case reported 143 Fed. 810, 74 C. C. A. 484; Faires v. Cockrell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; First Nat. Bank v. City Trust, Safe Deposit & Surety Co. of Philadelphia, 114 Fed. 529, 52 C. C. A. 313.

[7] Subrogation is, in practice, merely the substitution of one party for another in respect to certain property rights. In transactions of this character, where a surety seeks subrogation to the rights of one occupying the status of a creditor, the rights of the surety, when he performs the contract of a defaulting principal, are coextensive with, and limited by, the rights of the creditor with respect to the property sought to be reached. If in this instance the board had a right to hold the fund in controversy as security against any damages likely to result from a nonperformance of the contract by the engineering company, the surety company would be entitled by subrogation to the same rights if occupying the attitude of a surety who had discharged the obligation of a defaulting principal. If the right of the broad was superior to that of one claiming by an equitable assignment from the contractor or debtor, it logically follows that its successor by legal substitution would also hold a superior right; but if under the conditions existing at the time this controversy over the fund arose the board could not lawfully refuse to pay over this installment either to the engineering company or its assignee, the board had no claims to which the surety company had a right to be substituted. Equity only subrogates the surety to such rights as the creditor may lawfully claim, not to those which the creditor may arbitrarily or unlawfully claim.

[8] It then becomes necessary to discuss the rights of the board with respect to this fund at the time it was paid over to the surety company by direction of the board.

Under the terms of the contract this sum of $13,347.97 was due and payable to the engineering company before the controversy arose. The right of the board to then refuse payment, if any existed, would depend upon its right to ignore its contractual obligations. The question then arises: Did the board have that right? Clearly not, unless the engineering company had defaulted to such an extent as amounted to an abandonment of its contract. As long as the contract was kept alive, the board could not lawfully refuse to comply with its terms, and that instrument furnished the rule for determining the rights and obligations of the parties. On the other hand, if the engineering company had abandoned its contract and refused to further continue in its performance, this would amount to such a default as would authorize the board to treat the contract as at an end, and absolve it from its obligation to thereafter make any payments in strict accordance with the terms of the contract. It might then lawfully hold all unpaid funds then under its control and belonging to the engineering company, as a protection against the damages that might result from this default. The fact that the engineering company had previously assigned those funds to the appellant would not defeat that right; there being no evidence that the board had previously consented to such assignment. In such cases the assignee occupies no better position than that of the assignor. We come, then, to the further question: Did the engineering company make default, or repudiate and abandon its contract? There is nothing in the record, or the findings of the court, upon which an affirmative answer to this question could be based, unless found in the transaction by which the surety company on the 8th day of August, 1913, under a written agreement, took over the contract to complete the roads. It is not claimed that previous to that time the engineering company had failed in any respect to fully comply with the terms of its contract. The board and its members in their answer do not claim, as a justification for the disposition they made of the warrant in controversy, that there was at any time a default on the part of the engineering company. On the contrary, they seem to defend their conduct upon the ground that the surety company held the superior right by assignment. It appears from the findings of the court that what occurred on August 8th, the time when the conflicting demands for the warrant were presented to the board, is substantially this: After the appellant had made its demand, O'Neil, the manager of the engineering company, informed the board that on account of financial difficulties his company was unable to further perform its contract, that it had contracted with the surety company for the latter to take over and complete that contract according to its

terms, and requested the consent of the board, which was later given. The court in his findings refers to this as an assignment by the engineering company of its contract rights to the surety company. The board appears to have so regarded and treated it in its future dealings with the parties. The surety company evidently regarded it in the same light because of the express stipulations in its agreement with the engineering company. An assignment of its contract rights and duties by one of the parties with the consent of the other is not an abandonment or repudiation of the contract. The rights of the assignor are not forfeited, but are fully preserved and transferred to the assignee. If this were not so, the surety company, in this instance, did a vain thing when it stipulated for the transfer to itself of all the rights which the engineering company had under the terms of its contract with the board. While such stipulations might not amount to an estoppel to deny that there was something to assign, it indicates a construction which the interested parties themselves placed upon the transaction. To test the correctness of our conclusions, let us suppose that, instead of selecting the surety company, the engineering company had made this assignment for the same reason to some third party who was in no way connected with the original contract; could it then be said that the transaction amounted to an abandonment by the engineering company of its contract with the board? If it could, then the third party, who must depend upon the assignment alone, would take nothing by his contract. Yet it would seem absurd to contend that he did not, when the other party to the original contract had consented that he might do so. The fact that the surety company happens to be the assignee in this instance does not change the legal effect of the transaction upon the relations of the engineering company toward the board. It may be conceded that the surety company was moved to take over and·complete the original contract as the best method of reducing the loss likely to result from an anticipated default on the part of its principal. Still that course was one which it could have taken only by an agreement. Although by its timely interference the surety company averted a default, it cannot claim the benefit of conditions which a default only could bring about.

If there was no default on the part of the engineering company, and no forfeiture of its right to the payments according to contract, the board had nothing except the retained percentages to which the surety company could claim subrogation, even assuming that the latter occupied the status of one entitled to invoke that rule. .

[9] But there is still another reason for denying that right. If it be·conceded that

the engineering company did make default, and that this occurred while the board still held the funds in controversy in its hands, the conduct of the board in accepting the surety company as a substitute for the engineering company in the completion of the contract upon the original terms amounted to a waiver of any claim for damages resulting from that breach; and, if no claim for damages could thereafter be asserted, there was no basis for withholding payment of the warrant to the party in whose favor it had been issued.

[10] In handling this special fund the law conferred upon the board only special powers. It was the board's duty to make the necessary contracts, pass upon and allow claims, and direct their payment. It was the duty of the county clerk to issue and deliver the warrants to the proper party. Warrants could be drawn only against funds actually available for payment, and such funds could only be paid out as provided in that law. See Special Laws of 1909, p. 457. In this proceeding neither the board nor its members in their official capacity can be held liable so as to subject any portion of this fund to the payment of a claim for damages.

The warrant in controversy was an assignable chose in action, and the conduct of the members of the board in withholding it from the owner and directing its delivery to one who was not entitled to it amounted to a tort for which they may be held responsible in damages, and the trial court erred in not so holding.

The judgment of the court below will be modified to the extent of awarding a recovery in favor of the appellant against the individuals composing the board for· the amount sued for, and in all other respects, except as to costs, it will remain undisturbed. The appellees, members of the board, ask that, in the event judgment should be rendered against them, a judgment be rendered in their favor over against the surety company upon its bond of indemnity. There being no contest of their right to such a judgment, it will accordingly be rendered.