Appellee, W. B. Frey, sued W. G. Eustis and A. A. Reilly, to recover certain real estate in Clay county, consisting of 23 lots in the city of Henrietta and 133 acres of rural property. Plaintiff prayed in the alternative for judgment for certain indebtedness and foreclosure of liens on said property. A. A. Reilly disclaimed and is not appealing from the judgment. W. G. Eustis pleaded not guilty to the action for recovery of the real property and set up certain matters which he asserted rendered invalid the sale of the property in question under two deeds of trust upon which the plaintiff relied to support his title thereto. To the cause of action for recovery of the indebtedness and foreclosure of lien thereon he pleaded limitations. By cross-action the said W. G. Eustis also sought judgment for the said property and rents thereon. A trial before the court resulted in judgment for the plaintiff for the recovery of all of said property.
As our ruling on the validity of the sale of said property under two trust deeds, later referred to, will dispose of the case, we will not attempt to state the facts in detail relating to other questions not important to be considered in arriving at this conclusion. The rights of the parties grow out of transactions by which appellee Frey became surety for Eustis' indebtedness to W. B. Worsham, and the attempted enforcement by Frey of the security given and intended to secure the *Page 119 
payment of such Indebtedness. Eustis being the owner of all the property in controversy, some of which was held in the name of A. A. Reilly, and unable himself to borrow money on such security, conveyed, or had the said A. A. Reilly to convey, it by various deeds to said Frey, retaining in said deeds of conveyances vendors' liens to secure the payment of various notes executed by the said Frey and payable to Eustis. Frey then by various deeds conveyed the property to Eustis or Reilly, some of the deeds being to the one and some to the other. By the terms of these deeds the grantee assumed payment of the notes executed by Eustis upon conveyance to him. The said A. A. Reilly had no interest whatever in the land; she was a sister-in-law of Eustis, and he used her name for his own purposes, and those deeds made to her ostensibly were delivered to Eustis. It was not the intention of the parties to make any real sales of said property, but their purpose was to enable the said Eustis to secure money from W. B. Worsham on the faith of Frey's liability and to secure the payment of this indebtedness by said property. These notes were used by Eustis in securing money from W. B. Worsham, sometimes by transfer and sale thereof, and sometimes by placing them up as collateral to Eustis' own notes. Numerous deeds and notes were executed, and the notes used under these circumstances, the details of which it is not necessary to follow. The result, however, may be stated generally under two groups of facts:
Group 1. Eustis conveyed to Frey the 133 acres of land and 3 of the town lots, retaining a vendor's lien to secure the payment of a note for $3,350, dated December 20, 1910, executed by Frey and payable two years after date. This property was conveyed by Eustis to A. A. Reilly under circumstances already stated. The said note was Indorsed by Eustis and sold to W. B. Worsham. On October 11, 1913, Eustis executed a deed of trust, conveying said property to W. F. Suddath, to secure W. B. Worsham in the payment of said $3,350 note. The deed of trust seems to have been executed at the request of Frey and for his protection, and was delivered to him. On April 11, 1914, Worsham having filed suit on the note, Frey took it up, paying W. B. Worsham $4,374.55, besides $218.75 attorney's fees. Notation of the amount so paid was made on the note following the statement "Paid April 11, 1914, and the note was then delivered to Frey in pursuance of an oral agreement between him and Eustis and Worsham to the effect that he should have the same, together with the lien on the property by which it was secured. At the request of the said Frey this property was thereafter sold by the trustee Suddath in accordance with the terms of said deed of trust, and was bought in by Frey at such sale for a consideration of $160.
Group 2. The other 20 lots in controversy, having been conveyed to Frey by Eustis or A. A. Reilly, were reconveyed, some to Reilly and some to Eustis, under the circumstances already stated. The vendor's lien notes executed by Frey under these circumstances were also used by Eustis to secure money from W. B. Worsham. Frey was compelled to take up these notes also, and on October 11, 1913, the said W. G. Eustis, in payment of the balance due thereon, executed and delivered to the said Frey his note for $2,300, payable in six months, and at said time also executed a deed of trust, whereby he conveyed to W. F. Suddath, trustee, said 20 lots for the purpose of securing the payment of said note. Said property was also sold by the said W. F. Suddath, trustee, on June 6, 1914, and bought at such trustee's sale by Frey for the consideration of $150.
The first claim of Invalidity of said trustee's sale of the property included in group 1 is based on the proposition that the note executed by Eustis to Frey and held by Worsham to secure the payment of which the deed of trust was executed was discharged by its payment by Frey to Worsham, and Frey's cause of action against Eustis was on the implied promise of reimbursement, and not on the note, and that no foreclosure could be had by trustee's sale. While it is true that under the authorities in this state it has been held that the surety's cause of action, when he had been compelled to pay the indebtedness, is, at least in the absence of security to the principal indebtness, on the implied promise of reimbursement, it is recognized by the same authority that settled this rule in this state that:
"When the creditor in such a contract has a security from the principal obligor, or either of them, or if the debt itself constitutes a lien upon property of the debtor, as a vendor's lien, or if from its nature it be entitled to priority in payment over other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, the liens, and priorities of the creditor to the extent that he makes payment on the debt; and, if it be necessary, from the character of the lien or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to accomplish that end." Faires v. Cockerell, 88 Tex. 428,31 S.W. 194, 28 L.R.A. 528.
Subrogation, by the very definition of the term, implies a substitution of the surety making the forced payment for the original creditor. "The party subrogated is regarded as one and the same person with the creditor whom he succeeds." First National Bank v. Ackerman, 70 Tex. 315, 8 S.W. 47. "The rights of the surety are coextensive with those of the creditor holding the indebtedness." First National Bank v. O'Neill Engraving Co., 176 S.W. 79. "Subrogation gives to the substitute all the rights of the party for whom he is substituted." Bouvier. See, also, Sheldon on Subrogation, §§ 1, 11; Cyc. vol. 37, p. 363.
We see no reason to doubt that under this doctrine Frey would not only be entitled *Page 120 
to the lien secured by the execution of the deed of trust, but also to the speedy and inexpensive method of foreclosure of this lien by trustee's sale as provided by the contract creating the lien. A sale of a chattel by a trustee for the benefit of the surety who had paid the indebtedness was upheld in the case of Billingsley v. West, 197 S.W. 1054.
It is also claimed that since the legal title to the acreage property and the lots described in the first group, and also some of the lots in the second group, was in A. A. Reilly, and further that the purpose of the deed to A. A. Reilly was to create a lien in her favor to secure the payment of some indebtedness from Eustis to her to be subject to the principal indebtedness, and A. A. Reilly was thus a second mortgagee, the foreclosure was void because she was not a party thereto. The appellant Eustis is in no position to set up such facts. The property was actually his. He assumed to convey it by the deed of trust, disregarding the fact that the legal title was in the name of A. A. Reilly. Certainly the purchaser at the trustee's sale acquired whatever interest the said Eustis had in said property. The record does not bear out the assumption that A. A. Reilly was a second mortgagee, if that fact would be material. On the trial she disclaimed any interest in the property and her attorney asserted that she did not desire to have the property resold, and that she made no claim to the property, and all he "asked for his client was that no judgment be taken against her on the assumption of the notes as contained in the deeds which the plaintiff (Frey) had executed to her and which she never accepted." If she did in fact have a second lien, Eustis could not, under these circumstances, defeat the plaintiff's title, as he could not complain that the lien was not properly foreclosed as to A. A. Reilly.
Appellant also contends that the sales should be set aside because of inadequacy of the consideration received for the respective lots of property sold at the said trustee's sales. It is shown that the value of the property was very largely in excess, perhaps 20 times as much, of the price for which it was sold at such sales. No irregularity in the sales themselves or fraud in connection with the sales, however, was shown, and this would ordinarily be fatal to the right to set the sales aside, as mere inadequacy of price is not sufficient. Eustis was insolvent, and had been declared a bankrupt. The value of the property was less than Frey's indebtedness. Eustis expressly stated that he did not ask that it be resold; his purpose being to set aside the prior sales and prevent a resale by his plea of limitations. These facts show no good cause for setting aside said trustee's sales.
It appears that Frey, at the time of the conveyance to him, went into the possession of the 133 acres of land under an agreement with Eustis that he was to retain such possession until said $3,350 note was paid. Appellant set up the fact of such possession, and prayed that in the event any lien should be established in appellee's favor against said land the rent of said property should be offset against plaintiff's indebtedness. In his crossaction for recovery of said property appellant also prayed judgment for the rents. It is not necessary to determine whether under this agreement there would be any liability on the part of Frey for the rental value of said property. Any such rentals in any event should be credited on the mortgage indebtedness, and appellant could not recover them until such indebtedness had been paid. The fact that this credit had not been mane furnishes no reason for setting aside the sale under the deed of trust, as no harm appears to have thereby resulted to Eustis. The property does not appear to be of sufficient value to discharge the indebtedness remaining after such credit. The appellee, Frey, expressly waived any right to recover any further personal judgment on the indebtedness against Eustis, and his discharge in bankruptcy would also release him from further liability. The record does not show that the notices of the trustee's sale attempted to show the balance due on the indebtedness secured by the deed of trust, and for which the land was being sold. If any part of such indebtedness was a valid subsisting obligation — and the record conclusively shows that it was — the sale would be upheld, as the debtor should have tendered payment of the amount due and thus prevented sale. Hemphill v. Watson, 60 Tex. 682; Ives v. Culton, 197 S.W. 621.
The bankrupt estate of Eustis was not prejudiced by the refusal of the court to stay proceedings in this case, and there was no reversible error in this action of the court.
We find no reversible error assigned in the tenth to fourteenth assignments, inclusive, relating to the action of the lower court in preparing and filing the statement of facts and his conclusions of law and fact, etc.
Affirmed.